**STATE of Missouri, Respondent,**

v.

**Dwayne Eddie ROBINSON, Appellant.**

**No. 62028.**

Supreme Court of Missouri,
En Banc.

Jan. 15, 1981.

Mary Louise Moran, Asst. Public Defender, St. Louis, for appellant.

Steven D. Steinhilber, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Chief Justice.

A jury convicted appellant Dwayne Eddie Robinson of the offenses of robbery first degree and armed criminal action and assessed his punishment for a term of five years in the department of corrections on the robbery charge and three years on the armed criminal action charge. The court sentenced the appellant for the terms assessed by the jury and ordered that they be served consecutively. The court of appeals, eastern district, affirmed. On appellant's application the cause was ordered transferred here pursuant to Mo.Const., art. V, § 3, and Rule 83.03.

On the evening of January 19, 1977, two men entered the Starlight Lounge in the City of St. Louis. Appellant was identified by three witnesses as one of those men. Appellant fired a gun into the ceiling of the lounge as he walked through the door. He told the people in the lounge that a robbery was taking place. Appellant went behind the bar and got the money out of the cash register. Appellant said that he should kill everyone in the lounge because they all knew him. He said he was "Slim's son", referring to his father "Slim Robinson", a man known to many of the people in the tavern. Before leaving, the two men also took the wallets of two of the customers. After initially leaving, appellant returned in about two minutes and said he was going to kill everyone because they knew him. However, appellant immediately left the lounge.

At trial, three witnesses identified appellant as one of the robbers. In addition each witness testified that he had previously seen the appellant in the neighborhood. Appellant took the stand and admitted his presence in the tavern that night. He testified that he was there with a man named "Nate" and that during an argument between himself and Nate, Nate pulled a gun and fired a shot into the air. Appellant testified that no robbery had occurred; that in fact the robbery had been made up by the lounge's barmaid in retaliation for appellant's threat to tell the owner about an illegal gambling operation in the back room of the bar.

As his first point appellant alleges that the trial court committed reversible error when it permitted the prosecutor's questions and conduct on recross-examination insinuating that appellant had abandoned an alibi defense.

During redirect, appellant was asked if he had told his attorney the same story which he had told the police. Appellant responded, "I believe so." On recross-examination, the prosecuting attorney asked appellant if he had also told his lawyer he

would have an alibi and would call his mother as a witness. Appellant said, "No." He was then asked if his mother was endorsed as a witness by his attorney. Defense counsel objected, stating that the defense does not endorse witnesses. The prosecuting attorney then asked, "Sent you a letter saying she would be a witness?" Appellant answered that he was not sure. A discussion at the bench ensued concerning the letter. On appeal appellant contends that during this period of time the prosecuting attorney improperly exhibited this letter to the jury. Appellant made no record at the time to support his complaint that the prosecutor waved the letter in front of the jury.

The letter which is the subject of defense counsel's contentions was addressed to the prosecutor from appellant's attorney and states Mrs. Robinson (appellant's mother) might be called as a witness. The letter also gave Mrs. Robinson's address. A handwritten notation on the letter by the prosecutor stated that Mrs. Robinson would testify as to an alibi. While the prosecution's right to impeach the appellant's redirect testimony on recross cannot be denied, in view of the failure of the letter to state in any way the reason for calling Mrs. Robinson as a witness, its use for impeachment purposes must be viewed as improper. Though a defendant may be impeached by proof of a prior inconsistent statement or contradictory evidence where the statements or evidence are relative to matters inquired into in chief, such statements or evidence must actually be capable of being regarded as an inconsistent statement or contradictory evidence. *State v. Kaufman*, 254 S.W.2d 640 (Mo.1953); *State v. Christian*, 245 S.W.2d 895 (Mo.1952); § 546.260, RSMo 1978. The letter in the present case, sent by defense counsel, and not directly attributable to the appellant himself, was not in itself contradictory of appellant's testimony. The contradiction of the appellant's testimony was contained in the prosecutor's note written on the face of the letter. Such evidence is incompetent for impeachment purposes.

Nevertheless, though attempting to use the letter constituted error, two factors render it harmless. First, there is evidence in the record that the jury's exposure to the letter was minimal. Excluding the exchange by counsel at the bench and out of the hearing of the jury, the following is the complete testimony pertaining to the letter heard by the jury:

Q [By Mr. Ankney] Your mother was endorsed as a witness, wasn't she? Did you know the defense attorney endorsed your mother as a witness?

MRS. MORAN: Your Honor, that's an improper question. First of all, the defense doesn't endorse witnesses. There's no such thing.

MR. ANKNEY: I'm sorry.

Q (By Mr. Ankney) Sent you a letter saying she would be a witness?

A I am not sure.

Q If there's one in the court file—

MRS. MORAN: Your Honor, at this point I would request leave to approach the bench.

THE COURT: There should be a copy; you may mark it.

[Proceedings had at bench out of the hearing of the jury omitted.]

Q (By Mr. Ankney) Did you tell Mrs. Moran that your mother would testify for you and she would testify as to an alibi?

A I don't remember.

The limited reference to the letter within the hearing of the jury did not constitute prejudice to the appellant. Secondly, appellant on later redirect gave explanatory testimony as to his motive in contemplating calling his mother as a witness. Thus, the error was harmless in view of the overwhelming evidence against appellant and the identification of appellant by three witnesses with prior acquaintance with appellant.

Next appellant contends that his convictions for robbery first degree and armed criminal action constitute double jeopardy. In light of the opinion of this Court in *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980), appellant's point is well taken.

Consequently, the conviction for armed criminal action is vacated and set aside. We affirm the judgment of the trial court with respect to the conviction for robbery first degree.

In view of the disposition of appellant's double-jeopardy claim, there is no need for us to reach appellant's third point relating to whether the trial court abused its discretion in ordering consecutive, rather than concurrent, sentences.

■ For the foregoing reasons, the judgment and sentence of Dwayne Eddie Robinson for robbery first degree is affirmed and the judgment and sentence for armed criminal action is vacated. In a collateral proceeding now pending in this Court entitled, *Robinson v. White*, Superintendent, No. 62682, appellant seeks discharge on habeas corpus on the grounds that he has served the sentence for the robbery first degree conviction and that the armed criminal action sentence is void, and that he is therefore entitled to be discharged. The response to a show cause order in that proceeding by the Attorney General demonstrates that, if the armed criminal action judgment is void, the appellant is entitled to be discharged.

It is, therefore, ordered that the judgment and sentence for armed criminal action be vacated and set aside and appellant is ordered discharged.

SEILER, WELLIVER, MORGAN and HIGGINS, JJ., concur.

DONNELLY and RENDLEN, JJ., concur in part and dissent in part in separate opinions filed.

DONNELLY, Judge, concurring in part and dissenting in part.

I concur as to that part of the principal opinion that affirms the conviction of robbery first degree. Believing that the time has come to return the law of double jeopardy in Missouri to a state of coherency, I dissent from that part of the principal opinion that vacates the judgment and sentence for armed criminal action and orders the appellant discharged.

In what has become known as *Sours I, Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980), this Court held that to convict a defendant of both first degree robbery and armed criminal action placed that defendant twice in jeopardy for the same offense. The United States Supreme Court vacated the *Sours I* decision and remanded the case to this Court for reconsideration in light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *Missouri v. Sours*, 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980).

In what has become known as *Sours II, Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980), a majority of this Court, after examining *Whalen*, concluded that the *Sours I* opinion and judgment ought to be reinstated as supplemented by the *Sours II* opinion. *Id.* at 606. This supplementation consisted of discussion leading to the majority's conclusion that: "The General Assembly did clearly intend to impose two separate punishments for armed criminal action and the lesser included offense." *Id.* at 603. The majority went on to hold, however, that:

"If the vacation of our prior judgment and remand of the case for reconsideration in light of *Whalen* was intended to lead this Court to adopt the view that the General Assembly is free to impose separate punishments for two crimes that constitute the same offense under the traditional same evidence test, we are unable to so read *Whalen* and we are not prepared to take that step. We believe that the United States Supreme Court has heretofore reserved that question as noted above. We believe that such a ruling would abolish the traditional double jeopardy protection against multiple punishments for the same offense. It would require bifurcation of the meaning of 'same offense' under the double jeopardy clause. It would grant to the state legislature the power to define the meaning of 'same offense' as used in the double jeopardy clause of the Constitution, a traditional judicial function. The implicit effect of such a holding would be that the double jeopardy clause would hereafter

be only a limitation on the executive and judicial branches, but not on the legislative branch of government. We do not believe that it is appropriate for this Court to make such a ruling. If such a ruling is to be made, it is the responsibility of the United States Supreme Court to make it." *Id.* at 606.

In my opinion, the United States Supreme Court has now spoken. In *United States v. DiFrancesco,* —— U.S. ——, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), Justice Blackmun, writing for a majority of the Court, concluded that the constitutional double jeopardy guarantee against multiple punishment was not involved in the case. Why? Because:

"As *Ex parte Lange* [18 Wall. 163, 21 L.Ed. 872] demonstrates, a defendant may not receive a greater sentence than the legislature has authorized. No double jeopardy problem would have been presented in *Ex parte Lange* if Congress had provided that the offense there was punishable by both fine and imprisonment, even though that is multiple punishment. See *Whalen v. United States,* 445 U.S. 684, 688–89, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980); *id.,* at 697–98, 100 S.Ct. at 1440–41 (concurring opinion). The punishment authorized by Congress under §§ 3575 and 3576 is clear and specific and, accordingly, does not violate the guarantee against multiple punishment expounded by *Ex parte Lange.*" 101 S.Ct. at 438.

I would adopt the multiple punishment double jeopardy theory espoused in Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich.L.Rev. 1001, 1026–1032 (1980), to-wit: "[T]he double jeopardy clause operates as a *presumption* against finding that domestic law intends multiple offenses and multiple punishment, a presumption that can be overcome only by 'clear and unmistakable' evidence that the domestic law intends offenses and sentences be cumulated." *Id.* at 1026.

I believe that this Court, in *Sours II,* found such "clear and unmistakable" evidence. In *Sours II,* the majority held:

"The conclusion is inescapable that the Missouri General Assembly did intend to impose punishment for armed criminal action 'in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous [instrument] or deadly weapon.' " 603 S.W.2d at 603.

In light of *Whalen, DiFrancesco, Sours II,* and Professor Westen, I would affirm the conviction for armed criminal action.

RENDLEN, Judge, concurring in part and dissenting in part.

I concur in the principal opinion insofar as it affirms the conviction of robbery first degree. However, as to that part of the majority opinion which reverses the conviction as to armed criminal action, I must respectfully dissent for the same reasons set forth in my dissenting opinion of *Sours v. State,* 603 S.W.2d 592, 607–614 (Mo. banc 1980).