**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert James BALLARD,
Defendant-Appellant.**

No. 45335.

Missouri Court of Appeals,
Eastern District,
Division One.

July 19, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 1, 1983.

Application to Transfer Denied
Oct. 18, 1983.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David M. Harris, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, for defendant-appellant.

SIMON, Presiding Judge.

An appeal by defendant, Robert James Ballard (Ballard), from his conviction for Second Degree Robbery § 569.030 RSMo (1978) pursuant to a jury verdict. The jury assessed the punishment and the trial court sentenced Ballard to a five year term of imprisonment.

On appeal, Ballard raises the following points of error: (1) the cross-examination regarding a prior arrest, which did not result in a conviction, was improper; (2) the state's closing argument contained prejudicial statements; (3) the trial court erred in overruling his motion to suppress pretrial identification testimony; (4) the trial court erred in refusing to bar testimony relating to acts by third persons; (5) the trial court improperly applied § 491.050 RSMo (Supp. 1981); and (6) the trial court erred in submitting an alibi instruction patterned after MAI–CR 2d 3.20. We affirm.

On appeal, the evidence and its reasonable inferences shall be examined in a light most favorable to the state; all contrary

evidence will be disregarded unless it supports the verdict. *State v. Arnold,* 566 S.W.2d 185, 187 (Mo. banc 1978).

Applying this standard, we find the facts of this case are as follows: On July 9, Carl Easthom (Easthom) and an acquaintance, Lisa Sharkey (Sharkey), were riding their bicycles on Waterman Blvd. in the City of St. Louis about 6:00 p.m. Sharkey was riding some ten to twenty feet behind Easthom. As they were riding, two men crossed the street and approached them on foot. The men told Easthom and Sharkey to get off the bicycles and one of the men threatened Sharkey with an upraised tire iron or jack. Sharkey's assailant was identified as Mr. Delancey (Delancey). Sharkey screamed, got off her bicycle and ran to a car which was being driven by Ronald Botto (Botto). Botto had been driving on Waterman when he observed Sharkey's assailant, and offered Sharkey the protection of his car after she had surrendered her bicycle. From inside Botto's car, both he and Sharkey observed the confrontation between Easthom and the man identified as Ballard.

Easthom testified that he was facing Ballard squarely, approximately one to three feet away, when Ballard told him to get off the bicycle. Easthom refused to relinquish his bicycle, and testified he heard Sharkey scream. While Easthom was attempting to pull his bicycle away from the grasp of Ballard's left hand, he noticed that Ballard's right hand was wrapped with a light colored cloth. Easthom testified at trial that he believed Ballard had a gun because he noticed Ballard's hand and Ballard had told him, "I'll pop you, man, I'll pop you." After he surrendered his bicycle to Ballard, Easthom testified that Ballard slowly got on the bicycle and slowly rode away. The entire event lasted about one minute. Easthom joined Sharkey in Botto's car and they all decided to follow the assailants who were riding the bicycles down Waterman. After driving a short distance down Waterman, they were unable to continue because an aqua colored station wagon pulled across the street blocking their path. The robbers headed eastward on the bicy-

cles, but Botto was unable to pass through the intersection because the station wagon had stopped in the middle of the intersection.

Easthom took down the station wagon's license plate number since it appeared that the car may have been purposely blocking their path in order to allow Ballard and Delancey to escape. Botto dropped Sharkey off at her home while he and Easthom continued to search by automobile for the robbers. In the meantime, Sharkey called the police, giving them a description of the two men and the license number of the station wagon. A few minutes after Sharkey made the call, two police cars arrived at her apartment. While the police were at Sharkey's apartment, they were notified by dispatch that a car with a matching license number had been located on Sarah and McPherson. Sharkey was taken by police to Sarah and McPherson, while another police car remained to drive Easthom to that location when he returned. Sharkey identified the aqua station wagon, Delancey and Ballard at that location. When Easthom arrived, he identified Ballard as the man who had taken his bicycle forty minutes earlier.

Prior to trial, a hearing was held on Ballard's motion to suppress his identification by the victims. The trial court found that the show-up was not impermissibly suggestive. Furthermore, the court found any in-court identification of him would be independent and untainted.

At the suppression hearing, the following information was adduced: Both suspects had been handcuffed prior to identification by the victims. However, both victims recalled that they had been unaware that the suspects were wearing handcuffs; the show-up was conducted about forty minutes after the commission of the crime; the police never suggested to the witnesses that they had the persons who committed the crime; and Easthom and Sharkey independently identified the suspects. Easthom and Sharkey both made in-court identifications of Ballard.

At trial, Ballard took the stand and was asked by his attorney on direct examination whether he "had ever been in any trouble with the law before." Ballard replied, "Yes" and admitted that he had been convicted of tampering. The tampering conviction involved stripping a stolen automobile. His attorney then proceeded to ask Ballard about the night of July 9. On cross-examination, the prosecutor asked Ballard about a prior arrest for carrying a concealed weapon, which Ballard admitted. The charge had been dismissed as a result of an illegal search.

During closing argument, the prosecutor referred to the testimony of the witnesses which described Ballard's behavior as casual and cool during the commission of the crime. The prosecutor also referred to Ballard as a convicted thief. The court sustained the defense counsel's objection on the ground that the conviction was for tampering, not stealing. In his closing argument, the prosecutor stated that the show-up procedure was proper.

Ballard requested an alibi instruction patterned after MAI–CR 2d 3.22 and it was refused. The trial judge gave an alibi instruction patterned after MAI–CR 2d 3.20 which Ballard had also requested.

Following the trial, Ballard filed a timely motion for a new trial or, in the alternative, for judgment of acquittal. The trial court denied the motions, and granted Ballard leave to appeal in forma pauperis. Thereafter, Ballard duly filed his notice of appeal.

■ Ballard's first point of error alleges that the cross-examination regarding his prior arrest was improper. The general rule is that a witness' credibility may not be attacked by showing a mere arrest or investigation which did not result in a conviction. However, an exception to this rule occurs when the defendant, pursuant to § 546.260 RSMo (1978), takes the stand in his own behalf. Section 546.260 RSMo (1978), in pertinent part, provides:

"No person shall be incompetent to testify as a witness in any criminal cause or prosecution ... and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case...."

The defendant may be impeached by proof of a prior inconsistent statement or contradictory evidence where the statement or evidence is relative to matters inquired into in his examination in chief. *State v. Robinson,* 610 S.W.2d 4, 6 (Mo. banc 1981).

The case of *State v. Elbert,* 471 S.W.2d 170 (Mo.1971) is controlling. In *Elbert,* the defendant took the stand and was asked by his attorney whether he had ever had "trouble" with the police before. The defendant testified on direct that he had been caught smoking marijuana. On cross-examination, he testified that he had other prior arrests. Our Supreme Court held, pursuant to § 546.260 RSMo (1978), that an accused may be questioned as to any matter referred to in his examination in chief, particularly when the purpose is to show his credibility and trustworthiness.

In the case of *State v. Payton,* 559 S.W.2d 551, 554 (Mo.App.1977), the court, relying on the principles established in *Elbert,* held that when the defendant testified on direct examination that other than the arrest on the marijuana charge he had not previously "been in trouble," he attempted to show his previous good conduct. On cross-examination, the state was permitted to introduce testimony regarding several prior arrests.

■ Similarly, in the case at bar, when Ballard took the stand, his attorney on direct asked him whether he "had ever been in any trouble with the law before." Ballard admitted only to a prior conviction for tampering. The trial court admitted the evidence of Ballard's prior arrest because it was relevant to the question of his prior involvement with the law. Nothing in the record indicates that the prosecutor asked the question in bad faith.

We conclude that Ballard had opened the door, as did the defendants in *Elbert* and *Payton,* to cross-examination concerning his prior arrest. There is no abuse of discretion. Ballard's first point is without merit.

■ Ballard contends in his second point that the prosecutor's closing argument contained several prejudicial statements. First, we will address three statements to which no objection was made at trial or in the motion for a new trial. These allegations of error were raised for the first time on appeal and thus, were not properly preserved for consideration. Rule 29.11(d); *State v. Heinz*, 607 S.W.2d 873 (Mo.App. 1980). Consequently, our consideration is limited to a determination of whether these statements constitute plain error under Rule 29.12(b).

■ The trial court has broad discretion in determining the propriety of oral argument. As long as the prosecutor stays within the reasonable confines of the evidence and reasonable inferences therefrom, the argument is legitimate. *Heinz*, at 878.

■ Improper argument will justify reversal only if its effect is decisive on the jury's determination; and the defendant has the burden of demonstrating such effect. *State v. Wren*, 643 S.W.2d 800, 802 (Mo.1983).

■ To begin with, Ballard contends the prosecutor conjured up an image of Ballard as a professional thief without asserting any evidentiary foundation by referring to his manner during the commission of the crime as "casual and cool." The record indicates the witness did testify that Ballard slowly mounted the bicycle and slowly rode away. This testimony permits the reasonable inference that Ballard's manner was cool and casual.

■ Secondly, the prosecutor made the following comment: "You're requiring the victim of a crime, scared to death, to call a robber's bluff and then take a chance on getting shot." This comment was made in reference to the message which would be sent out to all criminal types, that is, if the jury did not find Ballard guilty of the offense of second degree robbery because they did not believe he had a gun underneath the cloth, then someone else in a similar situation may call the robber's bluff on the belief that he also does not have a gun.

The *Heinz* case dealt with a reference to a prior conviction by the prosecutor in closing argument followed by the statement: "If you believe Paul Heinz's story, no criminal is ever going to be convicted." *Heinz*, at 880. The court held the argument went solely to credibility and that it is proper for a prosecutor to convey to the jury the necessity of law enforcement as a deterrent to others. The prosecutor in *Heinz* and in the instant case did not improperly personalize the defendant.

■ Thirdly, the prosecutor commented on the propriety of the show-up procedure by stating: "There is nothing wrong with that [show-up] procedure under the law, nothing, or you wouldn't have heard about it." From the record, it is apparent that the prosecutor's comments made during the rebuttal were an attempt to refute the insinuation made by Ballard's attorney that the show-up procedure employed in this case was improper. The prosecutor addressed only the issue of the propriety of the show-up as a normal *procedure* in a criminal case. As noted previously, the trial court is afforded wide discretion in determining the permissible scope of counsel's argument to the jury. "In addition, it is proper for the prosecutor to retaliate to an issue raised by a defendant's argument even if the prosecutor's comment would otherwise be improper." *State v. Wood*, 596 S.W.2d 394 (Mo. banc 1980). We fail to find that the comment resulted in manifest injustice.

■ Lastly, we will address the prosecutor's reference to Ballard as a "convicted thief" to which there was a timely objection. The objection was sustained, but no request was made for a mistrial. It should be noted that Ballard received all the relief he requested. The prosecutor remarked that "some people took the witness stand and lied. And I'm going to ask you, do you want to believe a convicted thief...." The jury was instructed by the judge, after sustaining the objection, that the charge was for tampering.

The recent case of *State v. Wren,* 643 S.W.2d 800 (Mo.1983) involved very similar facts to the case at bar. In *Wren,* the defendant took the stand on his behalf and on direct examination admitted convictions for certain crimes. Cross-examination revealed several additional convictions not initially mentioned. The prosecutor's closing argument made reference to the numerous convictions. The prosecutor insinuated a person who was trying to rehabilitate themselves would remember those convictions and he indicated this should be considered while weighing the defendant's credibility. *Wren* held that the trial court had discretion in controlling the argument and of determining its decisive effect upon the jury. In view of the fact that the defendant's objections were sustained and the jury instructed to disregard the remarks, any prejudicial effect of the prosecutor's comment had been cured. *Wren,* at 802. Consequently, we find that the prosecutor's closing argument was proper and Ballard's second point fails.

Ballard's third contention is that the trial court erred in overruling his motion to suppress pretrial identification testimony. Prior to trial, the court held a hearing on Ballard's motion to suppress his identification by witnesses and found the show-up was not impermissibly suggestive. Furthermore, the court found any in-court identification of him would be independent and untainted. We conclude that the trial court correctly ruled on the motion.

Ballard contends the show-up procedure was impermissibly suggestive for the following reasons: (1) Easthom observed him for sixty seconds while Sharkey was screaming at Easthom; (2) the police told the witnesses before taking them to the show-up that they had the aqua car and the suspects; (3) he was handcuffed during the identification; and (4) the in-court identifications were tainted by the show-up.

It is settled law in Missouri that the prompt showing of a suspect to the victims of a crime is a proper procedure, justified by the exigencies of the situation; such action may immediately indicate to the officers whether the suspect should be released or held, or whether they should continue the search. *State v. Jackson,* 477 S.W.2d 47, 51 (Mo.1972); *State v. Johnson,* 628 S.W.2d 904, 907 (Mo.App.1982).

The *Johnson* case involved a show-up procedure analogous to the case at bar, except that the defendant in *Johnson* wore a sheer nylon mask during the bank robbery. The defendant in *Johnson* and Ballard in this case were both viewed by the witnesses in daylight, at close proximity for at least sixty seconds. Ballard, like the defendant in *Johnson,* was handcuffed and surrounded by policemen at the show-up which was conducted within an hour of the robbery. The defendant in *Johnson* raised almost identical allegations to those raised by Ballard in this case. The *Johnson* court held the show-up procedure was proper and any in-court identification of witnesses had an adequate, independent basis. The *Johnson* court applied the test from *State v. Higgins,* 592 S.W.2d 151 (Mo.banc 1979) in which the following factors are to be considered: The opportunity of the witness to view the criminal during the commission of the crime; the witness' degree of attention; the accuracy of the witness' prior description; the witness' degree of certainty and length of time between the crime and the confrontation.

The in-court identifications of Ballard in this case satisfy the test in *Higgins.* An even stronger basis exists in the case at bar than in *Johnson* since the record indicates Ballard was unmasked and standing face to face with the victim. Judicial notice was taken of the fact that it was daylight. The show-up was conducted within forth minutes of the robbery. The witnesses made in-court identifications and testified as to the appearance and clothing of Ballard. Accordingly, Ballard's third point is without merit.

In his fourth point, Ballard alleges the trial court erred in refusing to bar testimony concerning the acts of Delancey because such testimony was irrelevant and prejudicial.

■ Testimony concerning the acts or statements of third persons preceding the crime charged is admissible if it is part of the *res gestae* and relevant. *State v. Talbert*, 454 S.W.2d 1, 3 (Mo.1970); *State v. Hurst*, 612 S.W.2d 846, 855 (Mo.App.1981). "For an act to be considered part of the *res gestae*, the act must be substantially contemporaneous with the commission of the crime and it must occur in the same transaction as the crime." *Hurst*, at 855.

In the *Hurst* case, when the victim stopped at a liquor store to buy cigarettes, approximately seven men were standing in front of the store. Two of the men forced her to drive to a deserted area where they raped her. They then took her back to the liquor store and a third man took her back to the same spot and raped her. He forced her to drive to a gas station lot where the third man left the car and the defendant then entered. The defendant also forced her to the same deserted spot and raped her. The victim's testimony regarding actions of third parties was relevant and so closely connected to the rape committed by the defendant that it was admissible as part of the *res gestae*. *Hurst*, at 855.

■ Similarly, Delancey's actions were contemporaneous with Ballard's. The record indicates that, after playing tennis, Easthom and Sharkey were riding their bicycles together down Waterman when Delancey and Ballard crossed the street and approached them on foot. Easthom and Sharkey stopped when they heard the men say, "Off the bikes." Easthom testified that he stopped and was next to his bike, ten feet from where Sharkey had stopped her bike. Easthom testified, "it became clear that something was wrong" when he observed Delancey "going after" Sharkey with a tire tool jack raised up high over her head. Ballard, simultaneously, had grasped the handlebar of Easthom's bike. Easthom heard Sharkey scream, "realized what was going on," and tried to pull his bike away from Ballard's grasp. At this point, Ballard told Easthom, "I'll pop you, man, I'll pop you." Easthom testified Ballard's right hand was covered by a cloth. Fearing Bal-

lard had a gun, Easthom surrendered his bike to Ballard without further resistance. The combined actions of Ballard and Delancey created a threat of immediate physical force to both Easthom and Sharkey. Testimony regarding Delancey's actions is relevant to the question of whether Easthom was threatened with force, an element of second degree robbery.

Therefore, we conclude the trial court properly admitted testimony concerning the acts of Delancey. Ballard's fourth point is meritless.

Ballard's fifth point is that the trial court incorrectly applied § 491.050 RSMo (Supp. 1981), which provides, in pertinent part:

Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case.

The record indicates that the trial judge overruled the defense counsel's motion in limine to prevent the prosecutor from impeaching Ballard with evidence of a prior guilty plea for tampering, for which he received a suspended imposition of sentence and was currently on probation. Ballard took the stand at trial and admitted his conviction on direct examination. As we perceive Ballard's specific argument, he contends he was forced to admit the prior conviction on direct rather than risk the prior conviction being brought to the jury's attention on cross-examination and this forced trial tactic prejudiced him.

Ballard correctly contends that prior to the enactment of the revised 1981 statute, a witness, for the purpose of § 491.050 RSMo (1978), could not be impeached with a conviction where the imposition of a sentence was suspended. He maintains that this change affects the substantive rights of individuals since the revised § 491.050 is adverse to the reasonable expectations of defendants who negotiated pleas in reliance on the old § 491.050.

The thrust of the statute remains the same; the legislation only broadened the acceptable methods of impeaching a witness. Impeachment of a witness' credibility is a trial tactic governed by evidentiary rules. Rules of evidence are generally procedural in nature. *State v. Walker,* 616 S.W.2d 48, 49 (Mo. banc 1981).

Section 491.050 RSMo (Supp.1981) was in effect at the time of Ballard's trial. Therefore, we find that the trial court properly applied the statute, and Ballard's argument is meritless.

Finally, Ballard contends the trial court erred in refusing tendered alibi instruction MAI–CR2d 3.22, and instead submitting an alibi instruction patterned after MAI–CR2d 3.20. Ballard requested two alibi instructions, MAI–CR2d 3.20 and 3.22. The record does not indicate whether both were offered together or alternatively; however, the trial court granted his request for an instruction based on MAI–CR2d 3.20. Ballard asserts that the Notes on Use under MAI–CR2d 3.20 requires that MAI–CR2d 3.22 is to be given if requested; therefore, he was prejudiced by the trial court's failure to grant his request.

It is well established that failing to give an instruction in violation of the rule or any applicable Note on Use shall constitute error, its prejudicial effect to be judicially determined. Rule 23.02(e); *State v. Franks,* 643 S.W.2d 624 (Mo.App.1982). We conclude that Ballard's testimony alone is sufficient to support an instruction on alibi. *State v. Franklin,* 591 S.W.2d 12, 14 (Mo.App.1979). Accordingly, the trial court erred by failing to comply with the applicable notes on usage. Having determined it was error not to give the instruction, we must now determine its prejudicial effect.

In reviewing allegations of instructional error, the prejudicial effect is to be determined by considering all the instructions together as a whole. *State v. Holt,* 592 S.W.2d 759, 776 (Mo.banc 1980). The record reveals that Ballard testified to his presence in a stalled station wagon at the intersection of the block where the robbery took place, and that neither he nor his companion were aware of a robbery taking place. The victims testified that after the robbers rode off on the stolen bicycles, they attempted to pursue them by car but were prevented from doing so by a station wagon blocking the intersection.

By requesting MAI–CR2d 3.22, a defendant submits to the jury in a positive way that he was at a specific place other than the scene of the crime at the time the crime was committed, and accepts the risk of the burden of proof of his alibi when he requests this affirmative type of submission. Notes on Use, MAI–CR2d 3.22. In *State v. McGee,* 602 S.W.2d 709, 712 (Mo.App.1980), a similar point of error was raised and found to be prejudicial. The *McGee* court found that the affirmative submission was supported by the evidence and the trial court's refusal to give MAI–CR2d 3.22 instruction prevented the defendant from directing the jury's attention to the evidence he felt bolstered his case the most. The defendant had presented evidence that he was at a tavern in Fenton at the time the attack occurred in South St. Louis.

Unlike the evidence submitted in *McGee,* the record in the present case reveals that Ballard's alibi testimony does not totally eliminate his involvement in the robbery. Ballard requested MAI–CR2d 3.22, which contained, in part, the following:

"If the defendant was in the 1966 blue Chevrolet at the time the alleged offense was committed..."

It could reasonably be inferred from the state's evidence that the occupants of the station wagon collaborated with the robbers of Sharkey and Easthom. Ballard's testimony placed him in the station wagon and near the scene of the crime. MAI–CR2d 3.20, the general alibi instruction submitted in this case, adequately instructed the jury, particularly in light of all the evidence. We conclude, upon reviewing the instructions submitted, that Ballard was not prejudiced. Ballard's final point is denied.

The judgment is affirmed.

SATZ and STEPHAN, JJ., concur.