Philip M. Hess, Presiding Judge *426 Introduction
Joevalis Johnson ("Appellant") was charged in the City of St. Louis circuit court with two counts of first-degree robbery, two counts of armed criminal action ("ACA"), and one count of unlawful possession of a firearm arising out of a robbery of two men at gunpoint. Prior to trial, the court granted Appellant's motion to sever the unlawful possession of a firearm charge. After a mistrial, a second jury found Appellant guilty of two counts of first-degree robbery and two counts of armed criminal action. In its judgment, however, the trial court also found Appellant guilty of the severed unlawful possession of a firearm count and sentenced him to a total of sixty years' imprisonment, including ten consecutive years for the unlawful possession charge. Appellant raises four points on appeal, alleging the trial court committed plain error by convicting and sentencing him for the unlawful possession of firearm charge that was severed, abused its discretion by allowing expert DNA testimony in response to a hypothetical question, and two points alleging the trial court clearly erred in denying Appellant's motions to suppress the victims' identifications of Appellant. We reverse the conviction for unlawful possession of a firearm and remand with instructions to vacate the conviction. Otherwise we affirm.
Factual and Procedural Background
Viewed in the light most favorable to the judgment, the facts adduced at trial are as follows. Kyle Conine ("Conine") and Kenneth Knackstedt ("Knackstedt") were at a bar in Soulard on August 17, 2014, around 1:30 a.m. They started walking to a nearby pizza restaurant after leaving the bar. After taking several steps into an alley, they turned around, and Appellant was pointing a gun at them. Appellant was wearing a white t-shirt or tank top. He ordered them to lay on the ground and give him everything they had. Conine relinquished his cellphone, forty-eight dollars, and his ID, and laid on the ground. Knackstedt threw eight dollars to the ground. Appellant pointed the gun in Knackstedt's face and demanded he pick up the money. Knackstedt obliged, but went to one knee rather than laying on the ground. Conine saw Appellant's face for only a few seconds. Knackstedt was face to face with Appellant for about two minutes. Conine and Knackstedt both stated the robbery lasted for, at most, five minutes. The alley was dimly lit according to Knackstedt, but there was enough light you could "read a newspaper."
Appellant fled. Conine returned to his car and drove around the block a few times before driving home. Knackstedt followed Appellant from a safe distance and called the police. He watched Appellant get on the back of a bicycle as the passenger. Appellant and the driver of the bicycle traveled a short distance on the bike before Appellant dismounted it and entered an alley. Knackstedt ceased pursuit because he knew Appellant had a gun and the alley was dark.
Knackstedt waited by the entrance of the alley until the police arrived and pointed them in the direction Appellant had went. Within fifteen minutes of the robbery, the police found Appellant hiding underneath the porch of an apartment building. They escorted Knackstedt to Appellant to conduct a show-up identification but provided no details about Appellant prior to the show-up. They asked Knackstedt if Appellant was the perpetrator. Knackstedt confirmed Appellant robbed him.
Appellant was handcuffed throughout the show-up. After the positive identification, *427 Knackstedt saw the fifty-three dollars taken from him and Conine near the porch. He also saw Conine's cellphone underneath the porch steps. The phone rang when Knackstedt called Conine's phone number. The police then showed Knackstedt a black jacket with a firearm protruding from it. Knackstedt identified the firearm as the gun used in the robbery. The police found the jacket about six feet from where the police found Appellant.
A few days later, the police presented Conine a photograph lineup of six people. Conine identified Appellant as the assailant when he viewed the lineup.
The State charged Appellant with two counts of first-degree robbery, two counts of ACA, and one count of unlawful possession of a firearm. Appellant moved to have the unlawful possession of a firearm charge dismissed or severed from the other charges due to the prejudice that would result from the jury knowing Appellant was a convicted felon. The trial court granted Appellant's motion to sever.
Appellant's first trial resulted in a mistrial when the jury failed to reach a unanimous verdict. At the retrial, defense counsel moved to suppress both Knackstedt and Conine's identifications of Appellant on the grounds the show-up identification was impermissibly suggestive. The trial court denied the motions.
At trial, the prosecutor asked the DNA section supervisor of the St. Louis Metropolitan Police Department Crime Laboratory (the "DNA Supervisor") during cross-examination whether her test results detected Appellant's DNA on the black jacket found next to where Appellant was hiding. She stated the DNA test results did not match Appellant. The DNA matched a Travis Kirkwood ("Kirkwood"). The prosecutor then asked the DNA Supervisor whether Kirkwood's DNA would be on the jacket if Kirkwood had lent the jacket to Appellant. Defense counsel objected, arguing there had been no evidence introduced by the State that Kirkwood had lent his jacket to Appellant. The trial court overruled the objection. The DNA Supervisor testified that if she knew the circumstances of the scenario, then she would not be surprised to find Kirkwood's DNA on the jacket.
The jury found Appellant guilty on all four counts. The trial court sentenced Appellant to twenty-five years for each first-degree robbery count and fifteen years for each ACA count. The trial court ran the ACA sentences concurrent with each corresponding robbery count but the robbery sentences consecutive with each other for a total of fifty years. The trial court also sentenced Appellant to a consecutive ten year term on the severed count of unlawful possession of a firearm.[1] This appeal follows.
Standards of Review
The standard of review for an unpreserved issue is plain error. See State v. Wright , 551 S.W.3d 608, 622 (Mo. App. E.D. 2018). The court has discretion to review plain errors affecting substantial rights when "manifest injustice or miscarriage of justice" would result otherwise. Rule 30.20.[2] The plain error rule should be used sparingly. See State v. White , 247 S.W.3d 557, 561 (Mo. App. E.D. 2007) (citing State v. Barnaby , 91 S.W.3d 221, 224 (Mo. App. W.D. 2002) ). The court looks to determine whether on the face of the appellant's *428 claim substantial grounds exist for believing the trial court committed a "plain" error. Barnaby , 91 S.W.3d at 224-25. Plain error under Rule 30.20 is error that is evident, obvious, and clear. Id. at 225.
We review a trial court's decision to admit or exclude evidence for "abuse of discretion." State v. Washington , 512 S.W.3d 118, 122 (Mo. App. E.D. 2017). A trial court abuses its discretion when its "ruling is clearly against the logic of the circumstances or is so arbitrary and unreasonable as to shock the sense of justice and suggest a lack of careful consideration." Id.
In reviewing the denial of a motion to suppress, we are limited to determining whether the motion is supported by substantial evidence. State v. Rousan, 961 S.W.2d 831, 845 (Mo. banc 1998). "The trial court's ruling on a motion to suppress is reversed only if it is clearly erroneous." State v. Hunter, 43 S.W.3d 336, 340 (Mo. App. W.D. 2001) (internal quotation and citation omitted). "The trial court's ruling is clearly erroneous if we are left with a definite and firm belief a mistake has been made." Id. "In reviewing the trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising therefrom are to be viewed in a light most favorable to the ruling of the trial court." State v. Carter, 955 S.W.2d 548, 560 (Mo. banc 1997).
Discussion
Appellant asserts four points on appeal. In point I, Appellant argues the trial court committed plain error in convicting and sentencing Appellant of the unlawful possession of a firearm count because the trial court severed the count. Appellant requests this conviction be vacated. Appellant argues in point II the trial court abused its discretion in overruling defense counsel's objection to the prosecutor asking whether she would expect to find Kirkwood's DNA on the jacket because it assumed a fact not in evidence and called for speculation. In points III and IV, Appellant argues the trial court clearly erred in overruling Appellant's motions to suppress identification because the show-up identification was so impermissibly suggestive as to create a substantial likelihood of misidentification and render the identifications unreliable.
The State concedes the trial court committed plain error in convicting Appellant of unlawful possession of a firearm. The State asks us to remand and allow the trial judge to resentence Appellant in light of the severed charge. In response to point II, the State contends the question posed to the expert witness was permissible because expert witnesses may answer hypothetical questions in circumstances in which a juror would otherwise be incapable of drawing a conclusion. In the alternative, the State argues if it was error to allow the expert to respond there is no prejudice to the Appellant. The State addresses points III and IV as essentially a single point due to Appellant's framing of those issues on appeal. The State argues the identification procedure was not impermissibly suggestive because the identifications were not produced by suggestion or encouragement of law enforcement.
We reverse the conviction for unlawful possession of a firearm and remand with instructions to vacate the conviction. We affirm all other counts.
A. Conviction for Unlawful Possession of a Firearm
The parties agree the court's sentence on the unlawful possession of a firearm is an unpreserved error. The court has discretion to review for plain error an *429 unpreserved issue that affects a substantial right. Rule 30.20. Plain error exists when a "manifest injustice or miscarriage of justice" would occur otherwise. Id.
The trial court committed plain error in sentencing and convicting Appellant of the unlawful possession of a firearm. It is an obvious "manifest injustice or miscarriage of justice" to sentence Appellant for ten additional years in prison after the State consented to severance and the trial court severed the charge. The State concedes this point. We reverse and remand with instructions to vacate the conviction. Point I is granted.
B. Expert Witness Testimony
In point II, Appellant claims the trial court abused its discretion in overruling defense counsel's objection to the prosecutor asking whether the DNA Supervisor would expect to find Kirkwood's DNA on the jacket if he lent it to Appellant because it assumed a fact not in evidence and called for speculation. Appellant asserts the improper question elicited a prejudicial answer and but for the court's error the outcome at trial would have been different.
The guiding principle for determining whether expert testimony is proper is "[i]f the subject is one with which lay jurors are not likely to be conversant.... On the other hand, if the subject is one of everyday experience, ... then opinion testimony is properly rejected." State v. Marks , 721 S.W.2d 51, 55-56 (Mo. App. W.D. 1986) (quoting Wessar v. John Chezik Motors, Inc. , 623 S.W.2d 599, 602 (Mo. App. W.D. 1981) ). "[When] an opinion is hypothetical in nature, it 'must not be founded on mere assumption or surmise, but on facts within the expert's knowledge or upon hypothetical questions embracing proven facts.' " Hobbs v. Harken , 969 S.W.2d 318, 323 (Mo. App. W.D. 1998) (quoting Lazane v. Bean , 782 S.W.2d 804, 806 (Mo. App. W.D. 1990) ). " 'When an expert is asked to assume certain facts are true in order to answer a hypothetical question, those facts must be established by the evidence.' " Lytle v. T-Mac, Inc., 931 S.W.2d 496, 500 (Mo. App. W.D. 1996) (quoting Repple v. Barnes Hosp., 778 S.W.2d 819, 822 (Mo. App. E.D. 1989) ).
If the trial court errs in admitting evidence, it "does not justify reversal unless the error was so prejudicial that it deprived the defendant of a fair trial such that the verdict would have been different." State v. Washington , 444 S.W.3d 532, 536 (Mo. App. E.D. 2014).
The prosecutor asked the DNA Supervisor whether she would expect to find Kirkwood's DNA on the jacket if Kirkwood lent it to Appellant. Over Appellant's objection the DNA Supervisor answered in the affirmative. It is unknown from the record whether Kirkwood lent Appellant his jacket. Kirkwood is referenced in the record only as a match for the partial DNA profile from the jacket. He was never identified as the individual that helped Appellant flee after the robbery. No evidence suggests Kirkwood lent the black jacket to Appellant.
Assuming, without deciding, the trial court abused its discretion and the State's question assumed a fact not established by the evidence, the response elicited did not prejudice Appellant. Knackstedt stared face to face with Appellant for several minutes. He testified that the lighting, while dim, was sufficient "to read a newspaper." He unequivocally identified Appellant at the show-up and at trial. Furthermore, the gun used in the robbery was found within six feet of where Appellant hid under an apartment porch. The exact amount of money stolen from Knackstedt and Conine was also within several feet of Appellant. Conine's phone rang under the *430 porch when Knackstedt called his phone number.
We find Appellant was not "deprived ... of a fair trial such that the verdict would have been different" if the court had not overruled Appellant's objection to the prosecutor asking whether she would expect to find Kirkwood's DNA on the jacket if Kirkwood lent it to Appellant. Id. Appellant was not prejudiced by the admission of this evidence. Point II is denied.
C. Knackstedt's and Conine's Identifications of Appellant
In points III and IV, Appellant argues the trial court erred in overruling defense counsel's motions to suppress Knackstedt and Conine's identifications of Appellant because the show-up procedure was so suggestive it created a substantial likelihood of Knackstedt's misidentification of the suspect and rendered the identification unreliable. Appellant asserts Conine's identification of Appellant was based on information Knackstedt told Conine about the show-up and therefore was an indirect "byproduct of the impermissibly suggestive, show-up procedure used with Mr. Knackstedt because Mr. Conine's identification was based on what Mr. Knackstedt told Mr. Conine about the show-up identification."
A show-up identification is the "prompt showing of a suspect to the victims of the crime ... justified by the exigencies of the situation; such action may immediately indicate to the officers whether the suspect should be released or held, or whether they should continue the search." State v. Ballard , 657 S.W.2d 302, 308 (Mo. App. E.D. 1983). "Identification testimony is admissible unless the pretrial identification procedure was unnecessarily suggestive and the suggestive procedure made the identification unreliable." State v. Middleton , 995 S.W.2d 443, 453 (Mo. banc 1999) (emphasis in original). Thus, determining whether to exclude an identification is a two-part test. State v. White , 518 S.W.3d 288, 291-92 (Mo. App. E.D. 2017).
A show-up "is not impermissively [sic] suggestive as long as the police do not unduly pressure the witness to make a positive identification." State v. Moorehead , 438 S.W.3d 515, 520 (Mo. App. E.D. 2014). "It is not impermissively [sic] suggestive for police to present a single suspect for identification shortly after the crime occurred, in or near a police vehicle, even when the suspect is in handcuffs, particularly when the police make no overt remarks concerning the subject's identity." Id. The Supreme Court of Missouri provided these factors in State v. Higgins , 592 S.W.2d 151, 160 (Mo. banc 1979), to determine the propriety of a show-up: "(1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation[;] and (5) the length of time between the crime and the confrontation."
Ballard affirmed a show-up with facts similar to the present case. The two victims were riding their bicycles in a neighborhood when two men approached and demanded the bicycles. One victim immediately surrendered her bicycle and ran to a friend's car, while the other engaged in a confrontation with one of the assailants. It was daylight and the suspect was unmasked and standing face to face with the victim. The victim refused to surrender his bicycle until he perceived the assailant was probably carrying a gun. The suspects rode off and the victims followed them in the friend's car, but a vehicle blocked the intersection. However, the police apprehended the suspects and conducted a show-up identification within forty minutes *431 of the robbery. The suspects were handcuffed during the show-up. Prior to the show-up, the police officers told the victims they already apprehended the suspects and the vehicle.
We held the Higgins test was satisfied. Ballard , 657 S.W.2d at 308. This court relied on the assailant being unmasked, was face to face with the victim, and because it was daylight; the show-up occurred within forty minutes of the robbery; and the witnesses made in-court identifications and gave testimony on the clothing and appearance of the assailant. Id. Therefore, the show-up identification was not impermissibly suggestive. Id.
Here, Knackstedt stared at Appellant's unmasked face during the robbery, and at one point, the two were nose to nose. Although the robbery in Ballard occurred in daylight, the street lights here provided enough illumination for Knackstedt to unequivocally identify Appellant as the robber. Knackstedt testified: "He had a gun pointed right between my eyes.... You don't forget that." Knackstedt therefore had the best opportunity to view the criminal during the commission of the crime and his detailed testimony suggests a high degree of attention. Further, the show-up occurred about ten minutes after Knackstedt lost sight of Appellant. The record indicates only that Appellant was found under the porch of an apartment building. A show-up "is not impermissively [sic] suggestive as long as the police do not unduly pressure the witness to make a positive identification." Moorehead , 438 S.W.3d at 520. There is no evidence in the record of law enforcement unduly pressuring Knackstedt.
Finally, Missouri appellate courts have held for the State when the defendant was far less identifiable and the procedure more suggestive. See State v. Johnson , 628 S.W.2d 904, 906-09 (Mo. App. E.D. 1982) (holding that the identification of bank robbers wearing masks was not impermissibly suggestive notwithstanding law enforcements comments about apprehending a "suspect" to witnesses prior to the show-up).
We find the show-up with Knackstedt was not impermissibly suggestive. Therefore, it is unnecessary to assess the "reliability" prong of the test. See White , 518 S.W.3d at 291-92. We are not left with a "definite and firm conviction" a mistake has been made based on the record.
It is also unnecessary to address point IV because Conine's identification is not the "byproduct" of the "impermissibly suggestive" show-up procedure used with Knackstedt. We have already determined that Knackstedt's identification at the show-up was not unnecessarily suggestive so Conine's subsequent identification of Appellant cannot be a "byproduct" of an "impermissibly suggestive" show-up procedure. Further, Conine disputed that his identification of Appellant was based on what Knackstedt told him and it was up to the jury to decide this issue. Points III and IV are denied.
Conclusion
For the foregoing reasons, Appellant's ten year sentence for unlawful possession of a firearm is reversed and remanded with instructions to vacate the conviction. We affirm all other points.
Robert G. Dowd, Jr., J. and Mary K. Hoff, J. concur.

We take judicial notice that the State dismissed the unlawful possession of a firearm charge following the trial court's judgment and this appeal.

All rule references are to Missouri Supreme Court Rules (2017), unless otherwise indicated.