STATE of Missouri, Respondent,

v.

Samuel J. BLANCHARD, Appellant.

Samuel J. BLANCHARD,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 66503, 68147.

Missouri Court of Appeals,
Eastern District,
Division One.

April 16, 1996.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Joiner, Assistant Attorney General, Jefferson City, for respondent.

KAROHL, Judge.

Samuel J. Blanchard appeals his judgment, conviction and sentence for stealing over $150, § 570.030 RSMo1994, and tampering first degree, § 569.080.1(2) RSMo1994. He was sentenced as a prior and persistent offender to twenty years imprisonment. He also appeals the denial of post conviction relief under Rule 29.15 after an evidentiary hearing. We affirm.

The state proved the charged crimes with the following evidence: On July 25, 1993, at approximately 3:00 a.m., L.S. and a girlfriend were at a bar in the City of St. Louis. When the bar closed, the two women walked towards L.S.'s car which was located next to a parking garage. They noticed two men sitting near the car. L.S. unlocked and opened the car door. As she started to get into the car, she heard a noise. When she turned around, a man later identified as Blanchard punched her in the face. Blanchard then said, "don't move or I'll kill you."

L.S. screamed and tried to run, but was unable to get away. Blanchard took her car keys, pushed her to the ground, hopped in the car and drove away.

In the meantime, the girlfriend sought help. She ran to another car that was leaving the parking garage and yelled to the driver (W.B.) "help me, they're beating up my friend." He jumped out of the car and followed the girlfriend back to scene. W.B. saw "a young woman with dark hair being shoved down to the ground by a young black man." W.B. stood and watched Blanchard get into the car and drive away.

About nine hours later, three men, one of whom was later identified as Blanchard, entered Dillard's department store in South County. A store employee noticed the men walking "single file" through the clothing displays rather than the aisles. She became suspicious of their behavior and called security. At one point, Blanchard walked out of the store with an armload of clothing. She followed him outside and saw him throw the

clothing in the back of a car, identical to L.S.'s. She memorized the license number. She called the police and described the thief as wearing "light-colored clothing and a white ball hat." He also had an emblem on the front of his shirt, pre-washed blue jeans and very dark skin.

Police officers later located the car with the same license number reported by the store employee. The car was owned by L.S.'s father. The police later apprehended Blanchard who was wearing identical clothing as the store employee's description. The police brought her to the scene where she made a positive identification as the man who took the clothing from Dillard's.

The next day police showed L.S. a photographic array. She was unable to identify Blanchard. W.B. was shown the same photo array a few days later where he positively identified Blanchard. A week after the attack on L.S., L.S. and W.B. viewed a live line-up. Both were able to positively identify Blanchard as the attacker.

At trial, Blanchard did not testify. However, he presented evidence of mistaken identification.

## I. IDENTIFICATION TESTIMONY

Blanchard has one point on direct appeal. He challenges the identification testimony of L.S., W.B. and the store employee. He contends the in-court identifications were tainted by impermissible, suggestive out-of-court procedures. He claims he was the only person appearing in the photographic array and live line-up presented to L.S. and W.B., and was the only individual present at the showup identification presented to the store employee.

Although Blanchard filed a pretrial motion to suppress the identifications, his attorney failed to object to the positive identification testimony of the state's witnesses at trial. Therefore, our review is limited to plain error under Rule 30.20.

■ In order to exclude identification testimony as a matter of preserved error, the court must determine whether the procedures employed during the identifications were impermissibly suggestive. *State v.*

*Robinson*, 849 S.W.2d 693, 696 (Mo.App.E.D. 1993). If so, then the court must determine what impact the procedures had on the reliability of the identifications made by the witnesses. *Id.* Several factors are considered when determining reliability: (1) opportunity of the witnesses to view the criminal; (2) the degree of attention exercised; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989). If Blanchard's claim is without merit as preserved error, it certainly is not plain error.

### L.S.

■ Blanchard contends the trial court plainly erred in failing to exclude the identification testimony of L.S. The day after the attack on L.S., a police officer obtained a photograph of Blanchard and five other photos of similar men. He showed her a photographic spread to determine if she could identify the man who attacked her. She was unable to make an identification. A week later, she viewed a live line-up and positively identified Blanchard as the man who attacked her. At trial she testified the photographs of Blanchard looked different than when he attacked her. She testified she was looking for a darker skinned man and the picture of Blanchard made him look lighter. She also testified Blanchard was grinning in one picture and sticking his tongue out in the other. She indicated Blanchard had shorter hair in the photograph than when he attacked her. She testified that at the time she viewed the photo array she was on pain killers because of her facial injuries.

The record does not reveal any suggestiveness in the pretrial procedures. Even if the procedures were suggestive, the identifications were reliable. "The fact that a witness is unable to make a positive identification from a photo array does not negate the reliability of their positive in-court identification." *State v. Simmons*, 875 S.W.2d 919, 922 (Mo. App.W.D.1994). It goes to credibility and may be subject to cross-examination. *Id.* L.S. testified she had an opportunity to see

her attacker. She described the man who attacked her as about her height, wearing a white baseball cap, a T-shirt and jeans. She noticed he had dark skin and "droopy looking" eyes. Although she was unable to identify Blanchard in the photographic array, she positively identified him in the live line-up. Further she viewed the photographs and live line-up within a week of her attack. Her identification was therefore admissible.

## W.B.

Blanchard also argues the trial court plainly erred in failing to exclude the identification testimony of W.B. W.B. viewed the same photographic array as L.S., however, he positively identified Blanchard. He also viewed the same live line-up as L.S. He identified Blanchard as the man he saw attack L.S. The officer who conducted the photographic line-up testified he did not tell the witness who to pick or that somebody was in custody. He "merely advised him that I have some photos that I wanted him to see, that the subject he saw may or may not be in the photos." An identification is not impermissibly suggestive because a witness is told by the police that the photographic array contains a picture of the suspect. *State v. Simms*, 810 S.W.2d 577, 582 (Mo. App.1991).

Further, the identification testimony is reliable. W.B. testified he got a good look at the attacker because the area was well lit. He gave an accurate and detailed description of the attacker which fit the description of Blanchard. He made a conscious effort to remember the attacker. He described the attacker as a "[b]lack male, medium built, five seven, wearing jeans, gray T-shirt and a white baseball cap." He also indicated the attacker had "very distinctive eyes." He viewed the photographic array and the live line-up within one week of the attack. We find his identification testimony was also admissible.

## The Store Employee

Blanchard also contends the trial court plainly erred in failing to exclude the identification testimony of the store employee. She testified she reported to the police that the thief "had light-colored clothing and a white ball hat." She testified she told the officer before the show-up that Blanchard had an emblem on the front of the shirt, prewashed blue jeans and very dark skin. Twenty to thirty minutes after the incident at Dillard's, the police apprehended Blanchard based on her description and the license number she provided. She testified one of the officers told her he had somebody in custody that fit the description she gave earlier. The police brought her to the location where Blanchard was apprehended. Blanchard was the only black person around. He was standing outside with one or more police officers and not wearing handcuffs. She sat in the police car during the show-up. One of the officers testified he asked her if she could identify the subject as the one involved in the stealing. She positively identified Blanchard as the man who stole the clothing from Dillard's.

We find nothing suggestive about the procedures employed in this case. Police used a "show-up" procedure, where they brought the suspect back to the witness for identification as soon as he was apprehended. A show-up by definition is a "one-to-one confrontation between suspect and witness to crime.... Commonly, it occurs within a short time after the crime or under circumstances which would make a lineup impracticable or impossible." Black's Law Dictionary 1380 (6th ed.1990). We have repeatedly held show-ups are not impermissibly suggestive, as long as the police do not unduly pressure the witness to make a positive identification. *State v. Tunstall*, 848 S.W.2d 530, 532 (Mo.App.E.D.1993); *State v. Robinson*, 849 S.W.2d 693, 696 (Mo.App.E.D.1993).

Here, there was nothing suggestive in the show-up. It occurred within a short period of time after the stealing. There was no evidence to support a finding the police unduly pressured the witness during the show-up. The store employee testified she had an opportunity to view the thief. Only twenty to thirty minutes later she viewed the show-up. Prior to the show-up, she gave a detailed and accurate description which fit the description of Blanchard.

We find no preservable error in allowing the three state's witnesses to identify Blanchard. The identification testimony satisfies all the factors set forth in *Hornbuckle,* 769 S.W.2d at 93.

## II. POST CONVICTION RELIEF

Blanchard also contends the trial court clearly erred in denying his Rule 29.15 motion after an evidentiary hearing. He asserts his trial counsel was ineffective because he failed to object to the identification testimony reviewed on the direct appeal issue. We conclude the evidence would have been admissible even if an objection had been made.

We affirm.

REINHARD, P.J., and CRANDALL, J., concur.