STATE of Missouri, Respondent,

v.

Sylvester TOLLIVER, Appellant.

No. ED 81009.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 25, 2003.

David Hemingway, St. Louis, MO, Susan L. Hogan, Kansas City, MO, for appellant.

John M. Morris, III, Richard A. Starnes (co-counsel), Jefferson City, MO, for respondent.

GLENN A. NORTON, Judge.

Sylvester Tolliver appeals his convictions on two counts of assault in the second degree committed against his girlfriend. Tolliver specifically challenges the admission of his prior convictions for assaulting his girlfriend and of another act of violence towards her; he also complains that the prosecutor improperly commented on his failure to testify. We affirm.

## I. BACKGROUND

We view the evidence at trial and all reasonable inferences to be drawn therefrom favorably to the verdict. *See State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001).

Tolliver and his girlfriend, Lisa Jones, had been living together at his home for about six years at the time of trial. On July 7, 1999, Jones came home in the early morning hours, and Tolliver began yelling at her. They argued, and Tolliver grabbed her, punched her with a closed fist and struck her in the face with a wooden cane. She tried to run, but he grabbed her and bit her ear. Jones called 911. Police and emergency personnel on the scene observed a large bleeding cut on Jones's mouth, a swollen lip and a laceration on her ear. Jones was crying and hysterical, but refused to go with the ambulance to the hospital.

On September 16, 1999, Tolliver and Jones were at home after drinking alcohol all day. When Jones went to lie down in the basement, Tolliver became "hyper" and started chasing her around. She tried to hide in a bedroom, but Tolliver found her and started kicking her and yelling. Jones ran out to the hallway, where Tolliver hit her in the eye, then picked up the wooden cane and started hitting her in the back of the head until she ran outside to a neighbor's home. The neighbor called 911. When police and emergency personnel arrived, they noted that Jones had a laceration on her head, a swollen face and blood on her clothes. Tolliver was arrested that day and charged with two counts of assault in the second degree for the July and September assaults.[1]

At trial, the State introduced evidence that Tolliver had previously pled guilty to eight counts of assault in the third degree and two counts of assault in the second degree for various acts of violence, all against Jones during 1997 and 1998. In March 1997, Tolliver beat her with his fists and "took a lit cigarette to" her eye; in June, he punched her several times, cutting her lip and giving her a swollen eye; in September, Tolliver struck her in the face and bit her on the arm; in November, he hit her in the face. In January of 1998, Tolliver punched Jones in the face and body and bit her, causing a knot on her head, a laceration on her eye and a bruise on her arm; in May, he hit her in the face with his fist and in the back of head with a telephone; in July, Tolliver hit her with his fists and with a perfume bottle and bit her on the arm, causing a swollen lip and a cut on her head. This evidence was admitted over Tolliver's objection, along with photographs of Jones's injuries after the January and July 1998 incidents.

Although Jones gave the above descriptions of the 1999 incidents to the police,[2] at trial she was called by the defense and testified on Tolliver's behalf. She claimed that she—not Tolliver—had started those fights in a drunken rage and that she—not

---

1. Tolliver was first tried on these charges in August 2001, but the jury did not reach a verdict.

2. Her statements to the responding officers were admitted during the State's case as excited utterances.

Tolliver—struck first on both occasions. She claimed that he acted only in self-defense and that she lied to the police to get Tolliver in trouble. Jones also claimed not to recall the details of many of the 1997 and 1998 incidents for which Tolliver was convicted; she claimed she was drunk and that Tolliver acted only in self-defense on those occasions as well. There was also evidence that in December 1998, Jones called the police and accused Tolliver of hitting her with a wrench and breaking her arm. At trial, she claimed she fell on the ice.

Tolliver did not testify. The jury found him guilty on both counts.

## II. DISCUSSION

### A. Admission of Prior Bad Acts

■ Tolliver claims that the trial court erred by admitting evidence that Tolliver had committed prior acts of violence against Jones. Tolliver preserved his objection to the evidence that Jones had accused him of breaking her arm in December 1998 and to introduction of the photographs showing Jones's injuries in January and July of 1998. Because balancing the effect and value of this evidence is within the sound discretion of the trial court, we will not reverse for the improper admission of this evidence unless the trial court clearly abused that discretion. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). On the other hand, Tolliver did not properly preserve his challenge to the admission of his prior convictions. Therefore, we can only reverse if the admission of that evidence was plain error resulting in manifest injustice or a miscarriage of justice. *See* Rule 30.20; *State v. Christeson*, 50 S.W.3d 251, 269 (Mo. banc 2001).

We find no abuse of discretion or plain error here.[3]

■ The propriety of admitting any of this evidence depends on the purpose for which it was admitted. Evidence of prior bad acts is not admissible for the purpose of showing the propensity of the defendant to commit the charged crimes. *State v. Burns*, 978 S.W.2d 759, 761 (Mo. banc 1998). Evidence of prior bad acts may be admissible, however, if it is logically relevant in that it has some tendency to establish directly the defendant's guilt of the charged crimes and if its probative value outweighs its prejudicial effect. *Id.* at 761.

■ In cases of murder or assault, prior misconduct by the defendant toward the victim is logically relevant to show motive, intent, or absence of mistake or accident. *State v. Candela*, 929 S.W.2d 852, 871 (Mo. App. E.D.1996); *see also State v. Danikas*, 11 S.W.3d 782, 789–90 (Mo.App. W.D.1999) (collecting cases). Such evidence is only admissible for those purposes, however, if the defendant puts motive, intent, mistake or accident at issue in the case. *See State v. Conley*, 873 S.W.2d 233, 237 (Mo. banc 1994). Otherwise, "the prejudicial effect of admitting the evidence is substantial." *State v. Wallace*, 943 S.W.2d 721, 725 (Mo. App. W.D.1997).

■ Raising self-defense to an assault charge puts motive and intent squarely at issue, thereby making evidence of prior assaults against the same victim relevant. In *State v. Smotherman*, the defendant, charged with assaulting his wife, put motive and intent at issue by contending that he only shot at her because she shot at

---

**3.** Because we find that the evidence was admissible to show motive or intent in rebutting the self-defense claim, we need not address Tolliver's other argument regarding the *per se* admissibility of prior convictions for domestic violence to show a history of abuse under section 565.063.13 RSMo 2000.

him first. 993 S.W.2d 525, 526 (Mo.App. S.D.1999). Thus, evidence of past abuses by the defendant against his wife was probative of whether his intent in shooting the gun was to cause her serious physical injury. *Id.; see also State v. Arney,* 731 S.W.2d 36, 41 (Mo.App. S.D.1987).

Tolliver put motive and intent squarely at issue in this case by claiming, through the testimony of Jones, that he only hit her in self-defense because she hit him first. Therefore, evidence that Tolliver committed numerous assaults on Jones in the past was probative of whether Tolliver acted in self-defense during the charged incidents or in fact intended to cause Jones serious physical injury.

Tolliver claims that the probative value of this evidence was minimal because Jones recanted all accusations that Tolliver assaulted her. We must view Jones's testimony favorably to the verdict. Her testimony did little to establish that the previous acts of violence *for which Tolliver was convicted* were really innocently committed in self-defense. At best, her testimony could tend to disprove that she reported to police that Tolliver had broken her arm with a wrench in December of 1998, since there was no other evidence to show that had occurred. Nonetheless, the trial court, in weighing the probative value of this evidence, was free to disbelieve Jones. The trial court reasonably could have concluded that Jones's testimony did not lessen the probative value of Tolliver's prior bad acts.

Tolliver also urges that the probative value of this evidence was outweighed by its prejudicial effect because his intent to cause serious physical injury was sufficiently established by evidence that Jones actually incurred serious physical injuries. He cites to *Conley,* in which the Supreme Court stated that motive and intent must

be legitimate issues in a case before other bad acts are admissible:

> When there is direct evidence that the defendant committed the illicit act, the proof of the act *ordinarily* gives rise to an inference of the necessary mens rea. No other evidence is required to establish that element of the case *unless* the state has some reason to believe that the defendant will make intent or mistake or accident an issue in the case. Where the defendant's intent is not a real issue in the case, offering evidence of other crimes to establish that element of the state's case is unnecessary.

873 S.W.2d at 237 (emphasis added) (internal citations omitted). Proof that Jones sustained serious physical injury does not fully establish Tolliver's intent in this case because he claimed that the injuries were caused by his acts of self-defense. It would have been plausible—even with evidence of her serious physical injury—that Tolliver hit Jones not with the intention to cause those injuries, but only to defend himself from her attacks. *See Conley,* 873 S.W.2d at 237–38. Thus, criminal intent was in substantial controversy, and other evidence was admissible to establish *mens rea.* The trial court reasonably could have determined that the probative value of this evidence was not outweighed by any prejudicial effect it may have had.

Points I and II are denied.

### B. Comment on Failure to Testify

■ The prosecutor made the following statement during the last few minutes of her rebuttal to defense counsel's closing argument:

> You know, he wants to talk about those prior convictions, he wants to just sort of minimize them. You know what, he did them. He didn't get up and say she hit me first, he did them.

Tolliver's counsel objected and asked for a mistrial. The prosecutor stated she would withdraw the argument. Although the court agreed that it could not "unring the bell," the request for a mistrial was denied. The court did, however, instruct the jury to disregard the comment and explained that the defendant had no duty to testify. Shortly thereafter, the jury retired to deliberate. Tolliver argues on appeal that the prosecutor's comment was purposefully aimed at prejudicing him in the eyes of the jury and struck at the heart of his self-defense argument. We agree that the comment was improper, but find no abuse of discretion in the trial court's refusal to grant a mistrial.

■ Comments on the exercise of the defendant's right not to testify are forbidden. *State v. Neff,* 978 S.W.2d 341, 344 (Mo. banc 1998); *see also* section 546.270 RSMo 2000; Rule 27.05(a). We must consider the comment in the context in which it appears. *Neff,* 978 S.W.2d at 345. Here, the prosecutor's comment "he didn't get up and say" was a direct and improper reference to Tolliver's failure to testify. *See State v. Bulloch,* 785 S.W.2d 753, 755 (Mo.App. E.D.1990); *see also State v. Feltrop,* 803 S.W.2d 1, 17 (Mo. banc 1991).

■ The Supreme Court has made it clear that a mistrial is *not* required every time an improper comment about a defendant's failure to testify is made, even when the comment directly refers to defendant's silence. *Neff,* 978 S.W.2d at 347. The prejudicial impact of an improper comment is within the discretion of the trial court and may be cured by an instruction to the jury to disregard the comment. *Id.* at 345. Where, as here, the court sustains the objection and takes immediate remedial action, our Supreme Court directs that we defer to the trial court's discretion. *Id.* at 347. "Judicial discretion is deemed abused only when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 345.

There are cases in which the prosecutor's remarks are so egregious or the trial court's admonition so ineffective that a new trial is the only sufficient remedy. *Id.* at 346. This is not one of them. *See id.* (citing *State v. Snyder,* 182 Mo. 462, 82 S.W. 12, 31 (1904) and *State v. Watson,* 1 S.W.2d 837, 840 (Mo.1927), both involving multiple references by prosecutor to defendant's failure to testify despite trial court's admonitions). The improper remark in this case was isolated, and even assuming that it was made intentionally just before the jury retired and at a time when Tolliver could not respond to it, no other comment on Tolliver's failure to testify was made after the trial court's admonition. We must assume that the jurors followed the trial court's direction to disregard the isolated comment. *See Neff,* 978 S.W.2d at 347.

While we do not endorse the prosecutor's conduct, we cannot say that the court's refusal to grant a mistrial because of it in this case was "clearly against the logic of the circumstances" or "shocks the sense of justice." *Id.* at 345. The trial court's prompt instruction to the jury to disregard this comment was the appropriate remedial action to protect Tolliver in this case.

Point III is denied.

### III. CONCLUSION

The judgment is affirmed.

WILLIAM H. CRANDALL, P.J. and SHERRI B. SULLIVAN, J. concurring.