

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED100066 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1122-CR00238-01 |
| | ) | |
| TRAVIS MOOREHEAD, | ) | Honorable John F. Garvey |
| | ) | |
| Appellant. | ) | Filed: August 19, 2014 |

## Introduction

Travis Moorehead (Moorehead) appeals the trial court's entry of judgment and sentence upon a jury's verdict finding him guilty of robbery in the first degree. On appeal, he asserts the trial court erred in overruling his motion to strike a venireperson and in admitting identification evidence. We affirm.

## Background

The State of Missouri charged Moorehead as a prior offender with the class A felony of first-degree robbery,[1] stemming from the following incident. On the evening of January 13, 2011, Nick Walters (Victim) was delivering pizza when he was approached by two men. One man, whom Victim later identified as Moorehead, held a large, semiautomatic handgun, which Victim believed to be real, and demanded Victim's money. Prior to trial, Moorehead filed a

---

[1] The State also charged Moorehead with the class D felony of resisting arrest; however, the State later filed a *nolle prosequi* on that charge, electing not to proceed.

1

motion to suppress Victim's identification of Moorehead arguing the circumstances of the identification were inherently suggestive and conducive to mistaken identity. After a pre-trial hearing, the trial court denied the motion.

At trial, during *voir dire*, venireperson Mr. Peck stated he was a retired deputy sheriff for the City of St. Louis. He had worked as a deputy for eighteen years and had been retired for three months. He remained friends with several deputies and knew people who worked for the St. Louis Metropolitan Police Department, although not the witnesses in this case. Peck stated he would have an open mind regarding the testimony of police officers. Defense counsel moved to strike Peck based on his former career as a sheriff's deputy and close connection with law enforcement officers, arguing that although Peck had stated he could be fair, it was better practice to fill the jury panel with persons who are not police officers. The trial court overruled his motion, stating that Peck was retired, not active; he had been a sheriff's deputy, not a police officer; and he did not know any of the endorsed witnesses.

For the State, Victim testified that during the robbery the gunman stood about two arm's lengths, or approximately six feet, from Victim. The gunman was wearing a hooded jacket, and although the hood was up, nothing was obscuring his face. Victim stated he focused on the gunman's face so he would be able to describe it to police later. Approximately half an hour after he reported the crime, the police brought three men for him to view in a "show-up" type lineup (show-up). They brought all three men in marked police cars, had them exit the vehicle, and then shone a light on their faces for Victim to identify. Victim viewed each suspect separately as they arrived. Victim did not recognize the first two, telling the police he "[would not] make a positive ID unless [he] knew for sure." He then identified the third suspect, Moorehead, as the gunman with 90 percent certainty after recognizing his facial features. Victim

2

stated that during the identification, Moorehead was standing about ten feet away from him in handcuffs.

Officer Benjamin Lacy testified that after he arrested Moorehead and advised him of his Miranda rights, but before Victim identified Moorehead as the gunman, Moorehead admitted to having committed the robbery and stated he had left the gun in the residence of the other man involved in the robbery, identified as Melvin Thomas. Officer Lacy then transported Moorehead to where Victim was for the show-up, and Victim positively identified Moorehead as the gunman. Officer Lacy did not tell Victim prior to the show-up that Moorehead had confessed, but simply asked Victim if he recognized Moorehead. In addition, Officer Steve Schwerb testified that based on the information given by Moorehead, he conducted a search of Thomas's residence, where he discovered a replica gun. Victim identified the replica gun as the weapon used during the robbery.

Moorehead presented an alibi defense. After the trial, the jury returned a verdict of guilty on the charge of robbery in the first degree, and the trial court sentenced Moorehead to twenty years in the Missouri Department of Corrections. This appeal follows.

## Discussion

### Point I

In his first point on appeal, Moorehead argues the trial court erred in overruling his motion to strike venireperson Peck for cause because, due to Peck's former career as a sheriff's deputy, he was unable to fairly and impartially deliberate on Moorehead's defense involving the issue of police credibility. We disagree.

The trial court has wide discretion in determining the qualifications of a prospective juror and we will not disturb the court's ruling on a challenge for cause absent an abuse of that

3

discretion. State v. Garvey, 328 S.W.3d 408, 414 (Mo. App. E.D. 2010). We will find an abuse of discretion only when the *voir dire* permitted does not allow for the discovery of bias, prejudice, or partiality. State v. Mathis, 204 S.W.3d 247, 256 (Mo. App. E.D. 2006). Reversible error occurs only where both the record reflects an abuse of discretion and the defendant can demonstrate a real probability that he or she was prejudiced by the abuse. Id.

"The purpose of *voir dire* is to discover bias or prejudice in order to select a fair and impartial jury." State v. Gilbert, 103 S.W.3d 743, 746 (Mo. banc 2003). Thus, the essential question before the trial court on a challenge for cause is whether the venireperson unequivocally indicated an ability to evaluate the evidence fairly and impartially. State v. Grondman, 190 S.W.3d 496, 498 (Mo. App. W.D. 2006). A venireperson's qualifications are not determined by a single response, but rather from the entire *voir dire* examination. State v. Deck, 303 S.W.3d 527, 535 (Mo. banc 2010). If the *voir dire* responses indicate a possible bias but upon further examination that venireperson gives unequivocal assurances of impartiality, the mere possibility of prejudice will not disqualify the rehabilitated venireperson. Grondman, 190 S.W.3d at 498.

Here, the record shows that Peck stated he was a retired sheriff's deputy; however, "[s]tanding alone, former affiliation with law enforcement is not ground[s] for challenge for cause." State v. Williams, 650 S.W.2d 642, 643 (Mo. App. E.D. 1983); State v. Petty, 610 S.W.2d 126, 127 (Mo. App. E.D. 1980) ("[t]he ultimate question is what evidence is there to show more than a former affiliation with law enforcement"). To strike a venireperson for cause, there must be evidence of bias. See Grondman, 190 S.W.3d at 498. Peck did not indicate that his former career would impede his ability to evaluate the evidence fairly and impartially; rather, when asked if he would give more weight to the testimony of police officers, he responded that he would have an open mind. Further, although Peck stated he knew many deputies and police

4

officers, merely knowing police officers is not grounds to strike for cause when the venireperson does not know the State's witness testifying in the particular case and has not indicated bias in favor of law enforcement officers. See Williams, 650 S.W.2d at 643; cf. Petty, 610 S.W.2d at 127 (reversible error occurred when two jurors were former police officers and both personally knew State's witness). Here, Peck did not know the testifying officers, and his responses showed he could be fair and impartial. The trial court did not abuse its discretion in denying Moorehead's motion to strike Peck for cause.

Moreover, Moorehead failed to demonstrate prejudice from any alleged error in Peck's inclusion on the jury. See Mathis, 204 S.W.3d at 256. Even if Peck were biased in favor of the testimony of police officers, conviction here did not depend on the testimony of police officers. In addition to Officer Lacy's testimony of Moorehead's confession, Victim testified that Moorehead was the gunman. Victim's testimony alone would have been sufficient for a jury to convict Moorehead. State v. Byrd, 423 S.W.3d 882, 885 (Mo. App. E.D. 2014) (testimony of single witness is sufficient to establish identity of defendant); State v. Taylor, 373 S.W.3d 513, 518 (Mo. App. E.D. 2012) (it is within jury's province to decide credibility and weight of witness's testimony in resolving conflicts in evidence).

Point denied.

## Point II

In his second point on appeal, Moorehead argues the trial court erred in admitting the evidence of Victim's out-of-court and in-court identifications of Moorehead, because the out-of-court identification procedure was so unduly suggestive as to create a substantial likelihood of misidentification and to render the identification unreliable. We disagree.

5

The trial court has broad discretion in determining the admissibility of evidence. State v. Johnson, 207 S.W.3d 24, 42 (Mo. banc 2006). We review the trial court's admission of evidence following a ruling on a motion to suppress to determine whether there is substantial evidence supporting its decision, and we will affirm unless the ruling was clearly erroneous. State v. Thomas, 407 S.W.3d 190, 194-95 (Mo. App. E.D. 2013).

"The test for the admission of identification testimony is two-pronged." Id. The first prong considers whether the pre-trial identification procedure was impermissively suggestive. Only if the answer is yes do we consider the second prong, which is to measure the impact the suggestive procedure had upon the reliability of the identification made by the witness. Id.; see also State v. Vinson, 800 S.W.2d 444, 446 (Mo. banc 1990) ("[w]hile reliability is the lynch-pin in determining the admissibility of identification testimony, ... [appellant] must clear the suggestiveness hurdle before procuring a reliability review") (internal quotation marks and citations omitted). An out-of-court identification can be unduly suggestive if the identification proceeds not from the witness's recollection of first-hand observations, but from the procedures or actions of the police conducting the identification. State v. Floyd, 347 S.W.3d 115, 125 (Mo. App. E.D. 2011). If the procedure is not unduly suggestive, the out-of-court and in-court identifications are admissible.

Moorehead argues that the identification procedure here was unduly suggestive because the show-up gave Victim the impression that Moorehead was present at the area of the crime, the police transported Moorehead to the show-up in a marked police vehicle, Moorehead was handcuffed during the identification, and Victim identified Moorehead after failing to identify the first two subjects.

6

Missouri courts have routinely held that show-ups are acceptable if properly administered. See State v. Blanchard, 920 S.W.2d 147, 150 (Mo. App. E.D. 1996). A show-up is not impermissively suggestive as long as the police do not unduly pressure the witness to make a positive identification. Id. It is not impermissively suggestive for police to present a single suspect for identification shortly after the crime occurred, in or near a police vehicle, even when the suspect is in handcuffs, particularly when the police make no overt remarks concerning the subject's identity. State v. Murray, 428 S.W.3d 705, 710 (Mo. App. E.D. 2014); State v. Williams, 717 S.W.2d 561, 563 (Mo. App. E.D. 1986); State v. Johnson, 628 S.W.2d 904, 907 (Mo. App. E.D. 1982).

Our review of the record shows that the identification procedure was not unduly suggestive; rather, Victim positively identified Moorehead from his recollection of first-hand observations, and not from any actions of the police conducting the identification. See Floyd, 347 S.W.3d at 125. The police brought several suspects to Victim. They did not tell Victim whom to select, but merely asked him if he recognized any suspect. Victim stated he "[would not] make a positive ID unless [he] knew for sure" and then identified Moorehead as the gunman, based on his recognition of Moorehead's facial features. During the crime, Moorehead was standing at approximately two arm's lengths from Victim, and although Moorehead was wearing a hoodie, it did not obscure his face.

Without a record of suggestive identification procedures, there is no need to question the reliability of Victim's out-of-court and in-court identification. See Vinson, 800 S.W.2d at 446. The trial court did not err in overruling the motion to suppress and in admitting the identification evidence.

Point denied.

7

<u>Conclusion</u>

The judgment of the trial court is affirmed.

Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P.J., concurs.
Robert G. Dowd, Jr., J., concurs.