

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102889 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Robin R. Vannoy |
| DEDRIC HILLIARD, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: March 15, 2016 |

### Introduction

Dedric Hilliard (Appellant) appeals from the trial court's judgment entered upon a jury verdict convicting him of two counts of second-degree attempted robbery and one count of first-degree property damage. We affirm.

### Factual and Procedural Background

Viewed in the light most favorable to the verdict, the evidence presented at trial is as follows. At approximately 1:00 a.m. on August 30, 2014, Sarah Heim (Heim) and Jennifer McLaren (McLaren) left Molly's in Soulard and returned to their car. McLaren got in the driver's seat and Heim in the front passenger seat. McLaren noticed Appellant, whom she described as a "football player like looking person," walk past their car, then turn around and come back towards their car from the front. Appellant punched through the glass of the passenger side window, grabbed Heim's head, shook it back and forth and hit it on the headrest,

and screamed over and over to "Give me all your f**king money!" McLaren screamed and tried to get Appellant off of Heim by hitting him. Appellant let go of Heim's head with one hand and grabbed McLaren's arm, then grabbed McLaren around her neck, squeezed it, shook her head against the headrest, and tore her shirt.[1]

Ramon Sykes (Sykes), a bystander, heard "a distinctive pop of auto glass and a bloodcurdling scream." When he approached the corner of Allen and Ninth, he "saw a struggle in a compact sedan." Sykes heard screaming and saw Appellant "reached in [the car] huddled over." Sykes yelled out, "What's going on?" Appellant immediately withdrew himself from the car and ran down an alley across the street. Sykes stated he saw Appellant withdraw from the car "midway above the torso." As Appellant ran off, Sykes saw his face from the side and that he was wearing a white shirt and jeans. Sykes called 911.

Officer Edward Gonzales (Officer Gonzales), Officer Ryan Buscemi (Officer Buscemi), and Officer Barney Coats (Officer Coats) were patrolling the area in a marked Chevy Tahoe SUV when they received a report of a "robbery in progress at Eighth and Allen, involving a larger framed black male wearing a white shirt." Approximately one minute later, near Allen, Officer Coats saw Appellant cross the street in front of them, walking at a fast pace, and observed that he matched the description given of the robber. The officers observed Appellant had blood on him and detained him for further investigation. Appellant had a cut and some scrapes along his left forearm, an abrasion on his leg, and a bloodstain on his size 5XL light-colored shirt.

Officers Gonzales and Buscemi stayed with Appellant while Officer Coats located Heim and McLaren at the crime scene. At the crime scene, Officer Coats observed that the passenger

---

[1]Heim suffered bruising and cuts from the broken glass on her back, arm, and feet. McLaren's neck was red and discolored the next day and had bruises and cuts on her arm.

side window of the car was "busted out[.]" Heim and McLaren were "very distraught" and "screaming[.]" One of the victims told Officer Coats that a black male had walked past her vehicle, turned, come back, and broken their window with his arm or elbow. Heim stated Appellant "grabbed her, shook her violently," and demanded her property. McLaren said she had grabbed Appellant and tried to fight back, but he had grabbed her hair and her upper body and clothing and shook her violently. McLaren said Appellant had "dove" further into the vehicle compartment and grabbed her shoulder and neck area.

Officer Coats brought McLaren and Heim to where the officers had detained Appellant and both McLaren and Heim identified Appellant as the perpetrator. Sykes also identified Appellant in a separate show-up.

Appellant was indicted as a prior and persistent offender on two counts of second-degree attempted robbery and one count of first-degree property damage. Each of these counts was submitted to the jury with corresponding lesser included offenses. After a trial, the jury found Appellant guilty as charged. The court sentenced Appellant as a prior and persistent offender to a total of 12 years in prison. This appeal follows. Additional facts pertinent to the points on appeal will be adduced as necessary.

## Points on Appeal

In his first point, Appellant contends the trial court erred in admitting the show-up identification testimony of McLaren and Heim because the show-up was inherently suggestive in that it was conducted with him in handcuffs between two uniformed policemen with a flashlight pointed at his face, after Officer Coats had transported McLaren and Heim to the show-up together and allowed them to view and identify him at the same time.

In his second point, Appellant maintains the trial court abused its discretion and erred as a matter of law in denying his motion for a mistrial because of the State's failure to turn over

3

Evidence Technician Unit (ETU) Officer Harvey Graef's (Officer Graef) notes from which he testified at trial regarding the fingerprint investigation and its results.

## Standard of Review

The trial court has broad discretion in determining the admissibility of evidence. State v. Moorehead, 438 S.W.3d 515, 519 (Mo.App. E.D. 2014). We review the trial court's admission of evidence following a ruling on a motion to suppress to determine whether there is substantial evidence supporting its decision, and we will affirm unless the ruling was clearly erroneous. Id.

A mistrial is a drastic remedy only to be exercised in extraordinary circumstances. State v. Clemons, 946 S.W.2d 206, 217 (Mo.banc 1997). A decision whether to grant a mistrial is left to the sound discretion of the trial court. Id. Review is for abuse of discretion. Id.

## Discussion

### Point I – Show-up Identification

An identification procedure in which police transport a victim to where they are holding a suspect is known as a "show-up." Missouri courts have routinely held that show-ups are acceptable if properly administered. Moorehead, 438 S.W.3d at 520. A show-up is not impermissibly suggestive as long as the police do not unduly pressure the witness to make a positive identification. Id.

"'It is settled law in Missouri that the prompt showing of a suspect to the victims of a crime is a proper procedure, justified by the exigencies of the situation; such action may immediately indicate to the officers whether the suspect should be released or held, or whether they should continue the search.'" State v. Murray, 428 S.W.3d 705, 710 (Mo.App. E.D. 2014), quoting State v. Ballard, 657 S.W.2d 302, 308 (Mo.App. E.D. 1983). And where, as here, a suspect has been detained in the immediate vicinity of the robbery shortly after its occurrence,

4

the exigencies of the situation justify the type of show-up that police conducted.  Murray, 428 S.W.3d at 710, citing State v. Johnson, 628 S.W.2d 904, 907-08 (Mo.App. E.D. 1982).

We review the trial court's decision to admit identification testimony into evidence using a two-pronged test.  Murray, 428 S.W.3d at 709.  The first prong asks whether the pretrial identification procedure was impermissibly suggestive.  Id. at 710.  Only if the answer to the first prong is "yes" will we move to the second prong and assess the reliability of the identification.  Id.  A defendant must clear the suggestiveness hurdle before procuring a reliability review.  Id.

A pretrial identification procedure is unduly suggestive if the identification results not from the witness's recollection of firsthand observations, but rather from the procedures or actions employed by the police.  Murray, 428 S.W.3d at 710.  Police procedures will be found unduly suggestive if the witness's identification at the scene of the arrest is made in response to the suggestions or encouragement of the police, rather than due to the witness's own observation and visual recollection of the defendant's appearance.  Id.

As soon as the police car stopped where Appellant was detained between two officers − about one block from the crime scene, 10 minutes after the 911 call and 20 minutes after the crime − Officer Coats testified both Heim and McLaren, in the back seat of the car, "automatically stated, 'That's him, that's him.'"  Officer Coats stated the identifications were "almost simultaneous" and Heim and McLaren were "[a]bsolutely not" hesitant.

It is not impermissibly suggestive for police to present a single suspect for identification shortly after the crime occurred, in or near a police vehicle, even when the suspect is in handcuffs, particularly when the police make no overt remarks concerning the subject's identity.  Moorehead, 438 S.W.3d at 520, Murray, 428 S.W.3d at 710.

Officer Coats testified he did not indicate to Heim or McLaren that the person they had in custody was the one that did it. He also stated he did not tell them they had to make an identification. "A show-up is not impermissibly suggestive as long as the police do not unduly pressure the witness to make a positive identification." Moorehead, 438 S.W.3d at 520. A pretrial identification procedure is not unduly suggestive if the identification results from the witness's recollection of firsthand observations, not from the procedures or actions employed by the police. Murray, 428 S.W.3d at 710. The facts do not establish that Officers Coats, Gonzales, and Buscemi employed unduly suggestive procedures at the show-up.

The record demonstrates Heim and McLaren positively identified Appellant based on their recollection of their firsthand observations, and their identification was not based on unduly suggestive police procedures. Murray, 428 S.W.3d at 710. Because the police procedures were not impermissibly suggestive, this Court need not consider whether the pretrial identifications were reliable. The identifications were reliable, however, and satisfied the five factors of reliability: (1) the opportunity of the witness to view the criminal during the commission of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the witness's degree of certainty; and (5) the length of time between the crime and the confrontation. Ballard, 657 S.W.2d at 308. Appellant's distinctive appearance was noticed by McLaren twice before he punched in their window. Appellant caught her attention because he is 6'2" tall, weighs 370 pounds, wears a size 5XL shirt, and is bald. He also caught her attention because he walked by their car, then turned around and came back toward it. She described him as wearing a white shirt and jeans, very large like a football player, and bald. At the show-up, which occurred within 20 minutes of the crime, McLaren and Heim indicated their recognition of Appellant immediately, spontaneously, simultaneously, and with certainty. Heim stated

6

Appellant had the same body type, same clothing, and same bald head as their assailant. McLaren recognized Appellant's face and clothing right away, and stated she had always been good at recalling faces. She stated she was "certain" Appellant was the person that attacked her. Sykes also identified Appellant in a separate show-up and testified he was "positive" Appellant was the same person he saw in the struggle. Sykes testified he recognized Appellant at trial because his appearance was very distinctive and he recognized his facial composition. Sykes also stated Appellant reminded him of football linebackers and he was "pretty stout." Heim, McLaren, and Sykes all identified Appellant at trial.

Based on the foregoing, we find the police did not use unduly suggestive procedures in conducting the show-up, and the victims' identifications of Appellant as their attacker was based on their recollections of their firsthand observations, not on unduly suggestive police procedures. Moorehead, 438 S.W.3d at 520; Murray, 428 S.W.3d at 710. Additionally, their identifications satisfy the five factors to be considered as indicia of reliability. Ballard, 657 S.W.2d at 308. The trial court did not err in overruling the motion to suppress and admitting the identification evidence. For these reasons, Point I is denied.

Point II – Motion for Mistrial

In his second point, Appellant maintains the trial court abused its discretion in denying his motion for a mistrial because of the State's failure to turn over Officer Graef's lab notes from which he testified at trial regarding the fingerprint investigation and its results.

Officer Graef testified at trial he had case notes on the fingerprint testing performed on the outside of the passenger door of the victims' car. Officer Graef brought them to court and referred to them during his testimony. Officer Graef testified the fingerprint tests conducted on

7

the outside of the passenger door of the car revealed no useful prints, i.e., the prints were not identifiable and thus did not rule out Appellant or anyone else.

The notes were cumulative of Officer Graef's testimony, as he referred to them when testifying. The notes were not probative of anything as the fingerprint results themselves were neither exculpatory nor incriminating. The defense's failure to obtain the notes from the State or the State's failure to turn them over to the defense is not prejudicial when the results themselves had no probative value of guilt or innocence, and not grounds for the court to declare a mistrial.

The notes are not material in light of the other overwhelming evidence of Appellant's guilt, including the multiple positive identifications of Appellant as the perpetrator; Appellant's unique appearance; blood consistent with Appellant's on the car window and on McLaren's shirt; and Appellant's proximity in time and place to the crime with cuts on his arm and blood on his shirt.

For the foregoing reasons, the trial court did not abuse its discretion in failing to declare a mistrial based on the non-discovery of Officer Graef's notes on the fingerprint testing. Point II is denied.

### Conclusion

The judgment of the trial court is affirmed.

_Sherri B. Sullivan_
SHERRI B. SULLIVAN, P.J.

Kurt S. Odenwald, J., and
Lisa P. Page, J., concur.

8