

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110282 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 20SL-CR01188-01 |
| | ) | |
| CHICORY GRIFFIN, | ) | Honorable Jason D. Dodson |
| | ) | |
| Appellant. | ) | Filed: April 18, 2023 |

### Introduction

A trial jury found Appellant Chicory Griffin guilty of multiple counts of first-degree domestic assault, unlawful use of a weapon, first-degree assault, and armed criminal action. Griffin appeals the trial court's judgment. He argues the trial court abused its discretion in admitting certain evidence and in denying his motion to strike a juror for cause. We affirm the trial court's judgment.

### Factual and Procedural Background

Griffin was charged by amended information in lieu of indictment in St. Louis County, as a persistent offender, with various counts of first-degree domestic assault, unlawful use of a weapon, first-degree assault, and armed criminal action. The charges stemmed from incidents

occurring on February 29, 2020, and March 17, 2020. Viewed in the light most favorable to the verdict, the evidence is as follows. *See State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018).

*Facts*

Griffin and Errion Freeman (Ms. Freeman) dated from August 2019 until January 2020. Griffin moved into Ms. Freeman's apartment in October 2019, and they lived there together until their relationship ended in January 2020.

On the night of February 29, 2020, Griffin arrived at Ms. Freeman's apartment as she was getting ready to go to work at Da Beno nightclub. Ms. Freeman came out of her apartment and told Griffin to leave. As the two argued, Griffin said he was going to shoot Ms. Freeman, causing her to run away. Ms. Freeman ran to a man in a white van and asked him to drive her to a Schnuck's store where she knew there would be police officers. Ms. Freeman saw Griffin shooting at her while she ran away and heard several gunshots while inside the van.

At the Schnuck's store, Ms. Freeman spoke with police officers who took her home. Ms. Freeman did not stay at home that night for fear Griffin would return. Other officers responded to the scene and collected shell casings and surveillance video. Later, Ms. Freeman reviewed a photo lineup and identified Griffin.

After the events of February 29, Griffin continued to contact Ms. Freeman. She saw him again outside her cousin's house on March 16, 2020. The two did not speak, but Ms. Freeman noted that Griffin was driving a turquoise Ford Fusion. Later that night, Ms. Freeman went to work. Afterwards, she and her father, Eddie Freeman (Mr. Freeman), who also worked at Da Beno, went back to her apartment. After waking up the next morning, March 17, 2020, they drove to several locations. Ms. Freeman was driving, and Mr. Freeman was in the passenger seat.

As they left one location, Griffin's car pulled up on the passenger side of Ms. Freeman's car. The window of Griffin's car rolled down, and Griffin began shooting into Ms. Freeman's car. Mr. Freeman was struck several times. Ms. Freeman drove away and called 911.

After driving a short distance, Ms. Freeman stopped at 9876 Halls Ferry Road. Police officers and Emergency Medical Services (EMS) personnel arrived on the scene soon after. One of the first officers to arrive recalled seeing a turquoise Ford Fusion on his way to the scene. EMS transported Mr. Freeman to the hospital. Ms. Freeman stayed to talk to the police and identified Griffin from a photograph. Police officers collected evidence, including shell casings, from the scene.

Mr. Freeman was treated for multiple gunshot wounds and accompanying complications. He remained in a coma for approximately one month. After emerging from the coma, Mr. Freeman identified Griffin as the shooter in a photo lineup.

Following the shooting on March 17, 2020, a search warrant was issued to track Griffin's cell phone. Two days later, on March 19, 2020, police officers tracked Griffin's phone to a location in Illinois near the McKinley Bridge. The officers surveilled Griffin's car, a turquoise Ford Fusion, as it crossed the McKinley Bridge into Missouri, where they successfully deployed spike strips. Despite the spike strips, Griffin continued to drive at a high rate of speed. At Natural Bridge and Clarence Avenue, Griffin crashed into a fire hydrant and flipped his car several times. After the crash, Griffin attempted to flee on foot, but was apprehended and arrested.

Police officers recovered two firearms within a few feet of the car. One of the firearms, a pistol, matched ballistics evidence from the scenes of the February 29 and March 17 shootings.

*Procedure*

Before trial, Griffin's counsel moved to exclude eight police body camera videos of the March 17 shooting scene as, among other things, duplicative of other evidence and serving no purpose but to inflame the emotions of the jury. The trial court reserved ruling on the body camera videos "depending on what the other evidence is."

The case was tried to a jury. Several times during *voir dire* by the trial court and the State, all the jurors, including Juror 19, indicated they would follow the trial court's instructions. At one point, the State asked whether any of the panel members had been affected by gun violence in any way. The following exchange occurred between the prosecutor and Juror 19.

[Juror 19]: Yes. My first cousin, a couple years younger than me, took her life with a gun. And an older brother of one of my good friends took his life with a gun.

[Prosecutor]: Okay. I'm so very sorry to hear that. Same question I've had for everybody else: Is that something you think you'd be able to set aside and listen just to the evidence and just consider it fairly and impartially or do you think it might affect your ability to listen?

[Juror 19]: I can listen pretty impartially. I've got a major problem with guns.

[Prosecutor]: So you don't like guns?

[Juror 19]: No.

[Prosecutor]: I can understand that. Even though you don't like guns, can you just listen to the evidence and just base your decision on the evidence that you hear?

[Juror 19]: Yes.

Following *voir dire*, defense counsel moved to strike Juror 19 for cause. The court denied the motion because Juror 19 had qualified his statements and said he could listen impartially.

At trial, among Griffin's defenses was that he and Ms. Freeman had ended their relationship months before the charged crimes and, as defense counsel stated in opening, "they both moved on with their lives." Defense counsel maintained that, after the breakup, "they were

4

around each other, and there were no issues. No fights, no arguments, nothing." In closing argument, defense counsel repeated, "They had moved on with their lives. [Griffin] had no reason to attack [Ms. Freeman] at any point in time."

Mr. Freeman testified at trial. In addition to his testimony that Griffin shot him on March 17, 2020, Mr. Freeman described a previous altercation with Griffin in December 2019. At that time, Mr. Freeman was working at Da Beno parking cars. On the night of the altercation, Mr. Freeman got backed up and a line of cars formed. After dropping off Ms. Freeman at work, Griffin exited his vehicle and began collecting money from drivers while Mr. Freeman parked cars. Griffin collected an estimated $50 to $100 but denied having any money when Mr. Freeman confronted him. Mr. Freeman took a swing at Griffin, and Griffin beat up Mr. Freeman. Defense counsel objected to this testimony as evidence of prior bad acts to show Griffin's criminal propensity, but the trial court overruled the objection.

Various police officers also testified regarding the February 29 shooting, the March 17 shooting, and the apprehension of Griffin two days later on March 19. The State offered State's Exhibit 9, one police officer's body camera video depicting the March 17, 2020 scene at 9876 Halls Ferry Road, where Ms. Freeman stopped her car after the shooting. The video depicts officers arriving at Ms. Freeman's car and removing Mr. Freeman from the car to assess his wounds. Officers appear to render first aid before loading Mr. Freeman into an ambulance. Defense counsel objected that the video was cumulative and "improper bolstering" of Ms. Freeman's testimony, and would serve only to inflame the emotions of the jury. The trial court overruled the objection and admitted Exhibit 9 into evidence.

The State also offered State's Exhibit 54, a map depicting the route of Griffin's flight from police on March 19, 2020. Defense counsel objected to relevance. The trial court overruled the objection and admitted Exhibit 54 into evidence.

The jury found Griffin guilty on all counts. On December 29, 2021, the trial court sentenced him to life in prison and entered judgment consistent with the jury's verdicts. This appeal follows.

## Discussion

Griffin raises four points on appeal. In points one, two, and three, respectively, Griffin argues the trial court abused its discretion in admitting into evidence: Mr. Freeman's testimony to the December 2019 altercation with Griffin, the police body camera video from March 17, 2020, and the map of the route of Griffin's flight from police on March 19, 2020. In point four, Griffin argues the trial court abused its discretion in denying his motion to strike Juror 19 for cause.

### *Standard of Review*

A trial court's evidentiary rulings are reviewed for abuse of discretion. *State v. Williams*, 548 S.W.3d 275, 287 (Mo. banc 2018). "We further note that we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Burge*, 596 S.W.3d 657, 661 (Mo. App. S.D. 2020).

A trial court's ruling on a cause challenge of a juror also is reviewed for abuse of discretion. *State v. Johnson,* 244 S.W.3d 144, 158 (Mo. banc 2008). The ruling shall not be disturbed on appeal unless it is against the weight of the evidence and constitutes a clear abuse of discretion. *Id.*

Griffin first argues the trial court abused its discretion in overruling defense counsel's objection to Eddie Freeman's testimony regarding his altercation with Griffin in December 2019. Griffin argues Mr. Freeman's testimony was inadmissible prior bad acts evidence to show Griffin's criminal propensity, and its probative value was outweighed by its prejudicial impact because it tended to prove that Griffin was dishonest and violent.

Generally, evidence of uncharged crimes or acts is not admissible to show the propensity of the defendant to commit the charged crime. *State v. Tolliver*, 101 S.W.3d 313, 315 (Mo. App. E.D. 2003). Evidence of prior bad acts may be admissible, however, if it is logically relevant, in that it has some legitimate tendency to establish the defendant's guilt of the charged crime, and legally relevant, in that its probative value outweighs its prejudicial effect. *State v. Winfrey*, 337 S.W.3d 1, 11 (Mo. banc 2011).

Missouri courts have long observed, particularly in assault and murder cases, that "prior misconduct by the defendant toward the victim is logically relevant to show motive, intent, or absence of mistake or accident." *Tolliver*, 101 S.W.3d at 315 (citing *State v. Candela*, 929 S.W.2d 852, 871 (Mo. App. E.D. 1996)); *see also State v. White*, 549 S.W.3d 51, 55 (Mo. App. E.D. 2018) ("There is significant precedent in Missouri allowing evidence of prior misconduct by the defendant directed to the victim to be admitted in cases of assault."). "Such evidence is only admissible for those purposes, however, if the defendant puts motive, intent, mistake or accident at issue in the case." *Tolliver*, 101 S.W.3d at 315 (citing *State v. Conley,* 873 S.W.2d 233, 237 (Mo. banc 1994)).

In this case, Mr. Freeman's testimony of his December 2019 altercation with Griffin did not tend to show only Griffin's criminal propensity and that he was dishonest and violent. The

evidence was relevant to show Griffin's animus toward Mr. Freeman and, by extension, his daughter, Errion Freeman. It therefore was evidence of Griffin's motive and intent to shoot Mr. Freeman as he sat with Ms. Freeman in her car on March 17, 2020.

Beginning as early as opening statement, defense counsel repeatedly put Griffin's motive and intent at issue by alleging that, after Griffin and Ms. Freeman broke up in January 2020, they both moved on with their lives. In closing argument, counsel squarely denied that Griffin had any motive or intent to shoot up Ms. Freeman's car with her and her father in it: "[Griffin] had no reason to attack [Ms. Freeman] at any point in time." Griffin now fully concedes on appeal that the December 2019 altercation "provided a motive for Mr. Griffin shooting Mr. Freeman." Thus, the altercation between Griffin and Mr. Freeman in December 2019, their last interaction before Griffin shot Mr. Freeman on March 17, 2020, was highly relevant to Griffin's motive and intent to do so.

For these reasons, Mr. Freeman's testimony was both logically and legally relevant to show Griffin's motive and intent for the charged crimes. *See State v. Williams*, 784 S.W.2d 309, 312 (Mo. App. E.D. 1990) (holding evidence of prior attack was relevant to show defendant's animus toward victim and his intent to inflict injury).

The trial court did not abuse its discretion in admitting the evidence of the December 2019 altercation with Griffin. Point one is denied.

### Point Two

Second, Griffin argues the trial court abused its discretion in admitting State's Exhibit 9, police body camera video of the scene at 9876 Halls Ferry Road, where Ms. Freeman's car came to a stop after the shooting on March 17, 2020. Specifically, Griffin claims the video was

cumulative and bolstering of Ms. Freeman's testimony of what occurred after the shooting and served only to inflame the emotions of the jury.

The trial court is vested with broad discretion in the admission of visual evidence, including photographs and videos. *See State v. Middleton,* 995 S.W.2d 443, 462 (Mo. banc 1999). The same considerations that apply to the admission of photographic evidence also apply to video evidence. *Id.* Photographs and videos are relevant to show the scene of the crime, the identity of the victim, and the nature and extent of the wounds, or to otherwise assist the jury in understanding the testimony or help in proving an element of the crime. *State v. Feltrop,* 803 S.W.2d 1, 10–11 (Mo. banc 1991), *cert. denied,* 501 U.S. 1262 (1991); *see also State v. Clark*, 280 S.W.3d 625, 633 (Mo. App. S.D. 2008) (finding video showing moments following vehicle shooting admissible as visual depiction of crime scene and victim's condition when law enforcement arrived). Here, State's Exhibit 9 was relevant for all of those reasons.

More directly to Griffin's point, relevant photographic or video evidence is not rendered cumulative and inadmissible simply because other evidence also described what is shown in the photograph or video. *See State v. Schneider,* 736 S.W.2d 392, 403 (Mo. banc 1987), *cert. denied,* 484 U.S. 1047 (1988). That Ms. Freeman briefly testified to the aftermath of the shooting did not render Exhibit 9 cumulative or bolstering; it was simply corroborating evidence.

Also, such relevant evidence "should not be excluded because it may be inflammatory, unless the situation is so unusual that the extent of the prejudice outweighs the photograph's probative value." *State v. Murray,* 744 S.W.2d 762, 772 (Mo. banc), *cert. denied,* 488 U.S. 871 (1988). Exhibit 9 does not include any graphic or gruesome depictions of the scene or of Mr. Freeman's injuries. To the extent the visual depiction of the aftermath of the shooting might be

shocking to some jurors, that speaks more to the violence of the crime itself and does not make such relevant evidence otherwise inadmissible. *See Schneider,* 736 S.W.2d at 403.

The trial court did not abuse its discretion in admitting Exhibit 9. Point two is denied.

*Point Three*

Third, Griffin argues the trial court abused its discretion in admitting State's Exhibit 54, a map showing the route of Griffin's flight from police officers on March 19, 2020. Griffin argues the map was irrelevant.

"Evidence of flight is admissible to show consciousness of guilt." *State v. Hosier*, 454 S.W.3d 883, 895 (Mo. banc 2015) (citing *State v. Johns*, 34 S.W.3d 93, 112 (Mo. banc 2000)). "Flight may occur from the scene of the crime or elsewhere if it is in order to avoid arrest or prosecution." *State v. Cotton*, 621 S.W.2d 296, 300 (Mo. App. E.D. 1981). "Remoteness of flight in space and time from the scene and time of the alleged crime goes only to the weight of the evidence and not to its admissibility." *Id.*; *see also State v. Culpepper*, 505 S.W.3d 819 (Mo. App. S.D. 2016) (holding evidence of defendant's flight from officers three weeks after shooting at different location was admissible to prove defendant's consciousness of guilt). Exhibit 54 was relevant and admissible evidence to show Griffin's consciousness of guilt.

Beyond showing Griffin's consciousness of guilt, Exhibit 54 and the evidence of Griffin's flight from police also was highly probative evidence that Griffin shot Mr. Freeman on March 17, 2020, as well as that he shot at Ms. Freeman on February 29, 2020. The pistol recovered near Griffin's car matched ballistics evidence recovered from the scenes of both shootings.

The trial court did not abuse its discretion in admitting Exhibit 54. Point three is denied.

10

In his fourth and final point, Griffin argues the trial court abused its discretion in denying his motion to strike Juror 19 for cause because Juror 19 stated he had "a major problem with guns" and Griffin was charged with gun crimes.

The essential question before the trial court on a challenge for cause is whether the venireperson unequivocally indicated an ability to evaluate the evidence fairly and impartially. *State v. Moorehead*, 438 S.W.3d 515, 518 (Mo. App. E.D. 2014). A venireperson's qualifications are not determined by a single response, but rather from the entire *voir dire* examination. *Id.* (citing *State v. Deck*, 303 S.W.3d 527, 535 (Mo. banc 2010)). "If the *voir dire* responses indicate a possible bias but upon further examination that venireperson gives unequivocal assurances of impartiality, the mere possibility of prejudice will not disqualify the rehabilitated venireperson." *Moorehead*, 438 S.W.3d at 519.

Here, Juror 19 initially expressed that people he knew took their own lives with guns and he had a major problem with guns. Those initial responses are not solely determinative of Juror 19's qualifications to serve as a juror. At other points during *voir dire*, all the jurors, including Juror 19, indicated they would follow the trial court's instructions. In particular, the prosecutor's final question to Juror 19 was, "Even though you don't like guns, can you just listen to the evidence and just base your decision on the evidence that you hear?" Juror 19 responded unequivocally, "Yes." *See id.*

The trial court did not abuse its discretion in denying Griffin's motion to strike Juror 19 for cause. Point four is denied.

## Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

_____
Cristian M. Stevens, J.

Gary M. Gaertner, Jr., P.J., and
John P. Torbitzky, J., concur.